# Perry Hannah and another v. William H. Fife and another.

*Contracts : Public policy.* An agreement whereby A is to enter into and perform a contract with the state for the construction of a swamp-land state road, and to give B, who, at the public letting of the work, under the statute, had been the lowest bidder, as a bonus for being allowed to take his place in the contract, a portion of the swamp lands to be secured from the state for the performance of the work, is void as being against public policy.

*Letting contracts for public work : Collusion : Competition : Combinations.* Secret collusive agreements and combinations between proposed bidders to prevent competition at the letting of contracts for public work considered, and the principles upon which they are held void discussed.

*Statutes construed : Contracts : Public policy.* The statutes (*Sess. L. 1859, p. 315,* § 7 ; *Sess. L. 1863, p. 380*), providing that contracts to construct swamp-land state roads shall "in all cases be let to the lowest responsible bidder," do not admit of the substitution of another person as contractor in place of such bidder; and any contract based upon such illegal substitution is void.

*Agreement to use influence to get illegal contract with state confirmed.* Whether a stipulation in an agreement to use one's efforts and influence to get a contract with the state confirmed and to use no influence or effort to defeat it would, of itself, render the agreement in which it occurs void:—*Quære?*

Such a stipulation, however, relating to the consummation and approval of an illegal contract, cannot be considered unobjectionable in deciding upon the validity of the agreement containing it.

*Heard April 16.     Decided April 29.*

HANNAH *v.* FIFE.

Error to Grand Traverse Circuit.

*Fitch R. Williams* and *G. V. N. Lothrop,* for plaintiffs in error.

*E. S. Pratt* and *Ramsdell & Benedict,* for defendants in error.

CHRISTIANCY, CH. J.

This was an action of assumpsit brought by Fife and Haviland in the circuit court for the county of Grand Traverse against the plaintiffs in error, as the sureties of one Oscar L. Noble, in a contract between said Noble and Fife and Haviland, by which Noble agreed to enter into and perform a contract with the state for the construction of a swamp-land state road, for the building of which said Fife and Haviland had been the lowest bidders, and to give them as a bonus for being allowed to take their place in the contract, eight sections of the swamp lands to be received from the state for the performance of the work.

A copy of the contract is given below.

The evidence in the case tends to show the following state of facts:

Dewitt C. Leach, in April, 1868, being the local commissioner of the road in question, whose business it was, on behalf of the state, to let the contract for the building of the road to the lowest responsible bidder, subject to the approval of the general swamp-land state road commissioners, and having given due notice of the time and place of letting the contract, proceeded, in accordance with said notice, on the 9th day of April, 1868, to open the bids which had been received, two bids only having been put in for the whole work advertised to be let, one of which was by said Oscar L. Noble and the other by Fife and Haviland. And upon opening the bids in the presence of all these parties, it was found that Noble's bid was for a road-bed to be graded only sixteen feet wide, which was not in accord-

ance with the plan adopted by the state authorities or with
the notice, which required such road-bed to be twenty feet
wide; but he proposed to complete the work by the first
day of December then next, while the bid of Fife and Hav-
iland was for a road-bed twenty feet wide, according to the
plan and notice, but proposed the completion of the work
only by the 7th day of April, 1869. Each of the bids was
for two sections of land to the mile, which was the max-
imum quantity allowed by law for the work.—*Laws of 1863,
pp. 322–323 ; Laws of 1867, Vol. 2, p. 854.* The commis-
sioner, therefore, on reading the bids aloud in the hearing
of the parties, said to them that it was manifest from the
reading of the bids, to whom the job must go, meaning to
Fife and Haviland, and all the parties so understanding
him. And the commissioner was about to award the con-
tract to them, and would have done so at once; but Noble,
in that stage of the transaction, requested the commissioner
not to take any further steps in the matter until he and
Fife and Haviland should have an opportunity to consult
together; and thereupon Noble and Fife and Haviland left
the room, and returning in a few minutes, all joined in a
request that matters should remain as they were until they
could have more time to consult. The matter then
remained open until the 11th day of April; and during
this time there was considerable consultation between the
parties, and they separately conferred with the commissioner.
The result was that Noble and Fife and Haviland, having
entered into the agreement upon which this suit is brought,
on the 11th of April the contract with the state for build-
ing the road was, by the commissioner, with the assent and
approval of Fife and Haviland, made directly with Noble,
instead of Fife and Haviland, to whom it would otherwise
have been awarded. But the commissioner made this con-
tract with Noble substantially upon the terms of the bid
of Fife and Haviland, though upon somewhat more favora-
ble terms to the state, as it provided for the completion of
the work by December 1st, 1868, instead of April 7th, 1869,

HANNAH *v.* FIFE.

which that bid proposed. The contract with Noble being executed by the local commissioner was delivered to Noble with the bids, to be taken to Lansing, but the local commissioner made no report to the state commissioner, of the facts in the case or the substitution of Noble in place of Fife and Haviland, nor does it appear that he was ever notified of it. The contract of Noble was approved by the state commissioner; and the better to appreciate the nature of the contract of Noble with Fife and Haviland, upon which this suit is brought, it is proper to say that the substance of Noble's contract with the state was for the building of this road (59 miles and 25 chains) in the particular manner therein specified, to be completed by the first day of December, 1868; upon the completion and acceptance of which, and a certificate by the proper authorities, Noble was to receive in full compensation for the work, a grant by patent from the state, of one thousand two hundred and eighty acres (two sections) of swamp lands per mile; one-half to be taken from the counties in which the road ran, in proportion to its length in each county, and the other half from any unsold state swamp lands in the lower peninsula applicable to the construction of this road at the time of selection. And this contract was expressly made subject to the approval of the swamp-land state road commissioner.

Such was the substance of Noble's contract with the state, and such the circumstances under which that contract was made, as well as the contract of Noble with the plaintiffs below, in which the defendants below were Noble's sureties. This contract is in the following words: "An agreement made this 11th day of April, A. D. 1868, by and between W. H. Fife and Joseph B. Haviland, of Grand Traverse county, state of Michigan, parties of the first part, and Oscar L. Noble, of Antrim county, state aforesaid, of the second part, and Perry Hannah and Henry H. Noble as sureties for the performance of this contract on the part of Oscar L. Noble, party of the second part, to wit:

"W. H. Fife and Joseph B. Haviland this day agree to

allow D. C. Leach, local commissioner on the north division of the Midland City and Traverse Bay state swamp-land road, to make out and execute a contract with Oscar L. Noble, for the building of the north division of the Midland City and Traverse Bay state road, which was awarded to said Fife and Haviland at the declaring of said bid by the said local commissioner, on the 9th day of April, A. D. 1868. In consideration of the said Fife and Haviland agreeing to the above, the said Oscar L. Noble agrees on his part to execute a contract according to the printed forms of the state road commissioner, with the local commissioner, for the building of the north division of the Midland City and Grand Traverse Bay state swamp-land road, to be completed by the 1st day of December next, for the same pay in state swamp lands from the state of Michigan that is contained in the bid of Fife and Haviland.

"And the said Oscar L. Noble further agrees, if the contract which he makes with the local commissioner is approved by the state swamp-land road commissioner, that he will give to the said Fife and Haviland four sections of state swamp land, to be selected by the said Fife and Haviland, in any of the counties through which the road may run, and four sections of land to be selected from any of the unsold state swamp lands in the state of Michigan; and that he will receive from the said Fife and Haviland any description of unselected or unsold swamp lands, belonging to the state of Michigan, and hold the same on his contract for them until he can obtain a title to the said lands in their names by the completion of the work on his contract, which shall all be done on or before the first day of December next, except that he will mature to the said Fife and Haviland a title to one section which they may select out of the first matured scrip he may have a right to, from the state of Michigan. It is also understood and agreed, that if the said parties should conflict in making selections of swamp land, that the parties of the first part, Fife and Haviland, shall have the preference in choice, which shall

be within ninety days from this date. The said Oscar L. Noble further agrees to use all due diligence on his part, to get said contract consummated, and that he will not influence, counsel, or advise, nor become a party interested with any one else in making a contract to defeat the approval of this contract, which he agrees to make with the state of Michigan, and in case he should do so, then he shall be liable to the said Fife and Haviland for the value of said land.

"The parties do hereby mutually agree that if the state swamp-land road commissioner shall disapprove of the contract made between the local commissioner and Oscar L. Noble, according to the stipulations herein named, then the said Oscar L. Noble shall not be holden to the said Fife and Haviland in this agreement."

Now, while it is not claimed on the part of the plaintiffs in error that there was any fraud on the part of the commissioner in letting the contract to Noble instead of Fife and Haviland, the lowest responsible bidders, and it is admitted that he made it with Noble upon even better terms for the state than if let to the bidders themselves upon the terms of their bid, yet it is insisted that the contract between Noble (with his sureties) and Fife and Haviland, made under such circumstances, was illegal and void, as against public policy, and that it cannot be held valid without giving encouragement to, and furnishing facilities for, corrupt and collusive combinations among bidders for such contracts, and thereby defeating the object of the legislature in requiring such contracts to be let to the lowest responsible bidder.

The introduction of the contract in evidence was objected to on this ground, and the same question is fairly raised by several of the requests to charge, which were refused by the court.

The only statutes under which the commissioner was authorized to act in letting the contract on the part of the state, for the building of this and other like roads, required

that the contract, in persuance of previous public notice to that effect, should, " *in all cases*, be let *to the lowest responsible bidder*."—*Act of Feb. 12, 1859, Laws of 1859, p. 316,* § *7 ; Act of March 20, 1863, Laws of 1863, p. 380.*

The object of the legislature in requiring such contracts to be let to the lowest responsible bidder, cannot be mistaken.    It was to prevent fraud, and, so far as possible, the temptation to fraud and collusion between the officers letting the contract and the persons taking it, to excite competition among parties seeking to undertake work of this kind, and by these means to secure the doing of the work for the lowest price and on the most advantageous terms for the state.

Now, if these bidders, Noble on one side, and Fife and Haviland on the other, had, before or at the time of making their respective bids, entered into a secret agreement for their mutual profit and to avoid competition with each other, that for the purpose of getting a contract from the state for building this road at the highest rate or greatest quantity of land allowed by the law, only one of the parties should put in a bid which, in its terms, would accord with the plan of the road adopted by the state and with the notice given; while the other, though not in accordance with that plan or notice, should in all other respects appear to be in accordance with the terms proposed by the state, and better in some respects than the bid of the other, but which, nevertheless, could not be accepted, because not in accordance with the plan ; thus securing in advance the letting of the contract to one of the parties (unless others should offer better terms), without danger of competition from the other, while keeping up the appearance of competition; and that the contract should be performed by one of the parties for the mutual profit of both; or that the party taking the contract and doing the work should give to the other as his share of profit eight sections or any other portion of the land to be received from the state, if such had been the previous arrangement between the parties, it

will not be pretended that such an understanding, or any agreement resting upon it, or calculated to carry it into effect, could have been sustained. It would have been so manifestly fraudulent as against the state, and so subversive of the intentions and objects of the legislation, that no court could hesitate for a moment to declare it illegal and void.

Now, there is no evidence in the present case, except such inferences as may be drawn from the circumstances and the contracts made, that such was the previous agreement between these parties. But had there been such previous arrangement or any arrangement by which they were to avoid bidding against each other, and yet both divide the profits of the job, it must be admitted that this mode of bidding, the subsequent conduct of the parties leading to the contract between them, and that contract itself, were all admirably adapted for carrying such previous arrangement into effect. And it is difficult to resist the conclusion that these things tend pretty strongly to show the existence of some such previous understanding. It is perfectly clear, at least, that Noble, though ostensibly a competing bidder, was willing to take the contract upon Fife and Haviland's bid, and to do the whole work sooner than their bid required, and yet pay them a bonus of eight sections of land (5,120 acres). And we may safely assume that, after allowing them this bonus, he was satisfied the contract would still be profitable to himself, or he would not have taken it and agreed to pay that bonus. It cannot be doubted that he would just as readily have bid, and taken the contract from the state, at eight sections of land less than the bid, if he had not had to give these eight sections of land to Fife and Haviland.

But if he, without concert with the other bidders, had made his bid for so much less land, and made it according to the specifications in the notice, so that it might have been accepted, though he would have stood a chance to get the contract, he would also have run the risk of losing it by their bidding for a still less quantity. Had the bids of

both parties been in accordance with the notice and equally favorable to the state in other respects, yet both being for an equal quantity of land, neither would have been the lowest; and each being ready to give good security, the bids would have been equal, and a further bidding would have been necessary, which must have reduced the price and resulted in a benefit to the state. The putting in a bid, then, by Noble in a mode which under the notice could not have been accepted is not, when considered with reference to the subsequent acts of the parties, easily explained upon any other rational theory than that of previous concert for the purpose already intimated.

But, whether there was, in fact, any such secret understanding or fraudulent collusion between the bidders or not, is, in my opinion, entirely immaterial to the decision in the present case.

It seems to me clear that the tendency of all such contracts between bidders as that here in question, if recognized as valid by the courts, must be to afford encouragement and give facilities to bidders to enter into and give full effect to such secret agreements and combinations, and to enable them to defeat the plain intent and object of the legislature in requiring such contracts to be let to the lowest responsible bidder; that such must be the natural tendency of allowing the commissioner to recognize any bargain or agreement between the bidders after the bids were opened, transferring to another the right of the lowest bidder to the contract bid for, and the substitution of the one for the other, as contractor with the state. It is this tendency, rather than the fact of actual fraud in the particular transaction, which is generally recognized as rendering contracts void, as against public policy. — *Mills v. Mills, 40 N. Y., 543; Tool Company v. Norris, 2 Wallace, 45; People v. Township of Overyssel, 11 Mich., 222; O'Hara v. Carpenter, 23 Mich., 410.* And we think the contract sued upon must be held void upon this ground.

And, besides this general view, we think the contract

must be held void upon another analagous, but somewhat narrower ground. The mischievous tendency of the contract is sufficiently strong and manifest to warrant us in holding that the power of the commissioner to let these swamp-land road contracts must not be recognized as extending beyond the plain provision of the statutes, which require that "such contracts shall *in all cases be let to the lowest responsible bidder;*" and that, if this language could otherwise possibly admit of a construction which would allow the substitution of another person as the contractor, we cannot so extend it, when the manifest tendency would be to defeat the object of the statute itself, by encouraging the very evils it was intended to prevent.

The refusal of the commissioner to allow any such substitution might not, it is true, always prevent frauds upon the state by secret combinations among bidders, but it would lessen the means and cut off some of the facilities by which such fraudulent combinations might be carried into effect. And though we do not question the good faith of the commissioner, we think he mistook his duty and exceeded his powers; and that his only safe and only legal course was to follow the statute, to stand by the bid, and let the contract to the parties making it, or refuse to let it at all.

The thirst for public plunder, always strong, has of late been stimulated to unwonted eagerness, and seized like an epidemic upon all classes of the community. If public officers and the courts cannot check its progress by any obstacles of their own creation, they can, at least, refuse to aid in spreading the contagion, and may do something to discourage and check its course, by refusing to afford it such facilities as it may be within their power to withhold.

As the commissioner had no power to allow the substitution, and the contract sued upon is based upon that illegal substitution, to which the plaintiffs were parties, it must be held void upon this ground.

Whether the stipulation in the contract sued upon requiring Noble, in effect, to use his efforts and influence to get the contract with the state confirmed by the commissioner and to use no influence or effort to defeat it, would of itself render the contract in which it occurs void, if the contract to which it refers had been legal and valid, we need not decide. But this stipulation, relating to the consummation and approval of an illegal contract, can hardly be considered unobjectionable in deciding upon the validity of the contract in which it occurs.—See *Fuller v. Dame, 18 Pick., 479; Hutchen v. Gibson, 1 Bush (Ky.), 270; Mills v. Mills, 40 N. Y., 543; Cook v. Shipman, 51 Ill., 316; Hatzfield v. Gulden, 7 Watts, 152; Tool Co. v. Norris, 2 Wallace, 45; Eddy v. Capron, 4 R. I., 395.*

The contract upon which the suit was brought being, in our opinion, void, the judgment of the circuit court must be reversed, with costs. The errors being all assigned upon the bill of exceptions, we must *pro forma* award a new trial, though we are unable to discover how it can be rendered of any avail to the plaintiffs below.

CAMPBELL and COOLEY, JJ., concurred.

GRAVES, J., did not sit in this case.