FLETCHER *v.* JOHNSON.

CONTRACTS — PUBLIC POLICY — CHILLING BIDDING — ENFORCEMENT IN EQUITY.

> Where two persons, each desiring to purchase the same property, which is to be offered at public sale, agree that one shall purchase for the benefit of both, thereby preventing competitive bidding between themselves, the contract is contrary to public policy, and cannot be enforced in equity.

Appeal from Alpena; Emerick, J. Submitted January 4, 1905. (Docket No. 8.) Decided February 4, 1905.

Bill by Frank W. Fletcher against William H. Johnson for the specific performance of a contract. From a decree dismissing the bill, complainant appeals. Affirmed.

*Charles R. Henry*, for complainant.

*Joseph H. Cobb*, for defendant.

HOOKER, J. Complainant seeks by the bill in this cause the specific enforcement of a contract for the purchase,

for complainant's benefit, of certain shares of stock in a corporation. The corporation referred to is the Alpena Water Company, and both parties were at the time of the transaction stockholders therein, and each was apparently desirous of obtaining a majority of the stock of the corporation.

James D. Turnbull was at one time a stockholder, and owned at the time of his death 210 shares of this stock, of the par value of $10,500. This, with other stocks, had been assigned by him to the Alpena National Bank as security for a large indebtedness. Turnbull was also indebted to defendant, Johnson, who was a director and vice-president of the bank. In addition to the indebtedness mentioned, Turnbull was liable to Johnson as accommodation indorser upon paper of his held by the bank. To secure Johnson, as well as for the purpose of affording additional security to the bank, Turnbull had executed to Johnson a bill of sale covering a large amount of forest products, in trust for such purposes, which trust Johnson accepted. The complainant asked the bank to give him notice when it should determine to dispose of the water stock. About December 1, 1901, the board of directors of the bank considered the steps necessary to be taken in order to foreclose and cut off the equity of the Turnbull estate in these stocks to enable it to realize thereon in payment of its claims, and it was decided that the stocks should be offered at public sale, the proceeds to be accounted for to the estate after satisfying the obligations. Upon learning this the complainant telephoned Johnson to call upon him, and an interview was had, at which complainant told him that he knew that the complainant wanted to obtain this stock, and asked what they better do, and whether he should "go in there and bid against him" (Johnson). This resulted in an agreement that, if complainant would not bid against Johnson, the latter would buy the stock from the bank, one-half on complainant's account. The stock was not sold at public sale, but Johnson obtained the bank's interest, and afterwards ad-

justed the matter with the estate in a way to perfect his title to this stock. Complainant gave him his check for half of the cost of his purchase, and defendant accepted it, though he afterwards returned it, and refused to give complainant any of the stock. Upon hearing the cause, the court dismissed the bill, holding that the contract between the parties was opposed to public policy, and void. The complainant has appealed.

The evidence fairly shows that each of these persons desired the stock, or at least that the other should not have it all. Apparently it was a question of control of the company. To avoid competition between them, they agreed that one should bid for both, and that there should be no bidding against each other, and that the stock should be divided and the expense shared equally.

The question is resolved into this: May two persons, who desire to purchase the same property, which is to be offered for sale, agree between themselves that one shall purchase for the benefit of both, thereby preventing competitive bidding between themselves. The authorities are, perhaps, not in entire harmony upon this subject, but there is a near approach to uniformity upon the proposition that when the object of the contracting parties is to prevent competition at the sale, to the end that the property may be bought for less than its value, the contract is void. The cases cited by the complainant's counsel do not question that rule. The only reason that can be given for its non-application to the present case is that the parties did not design to buy the property for less than its value; in other words, it was their design to avoid paying an exorbitant price, liable to be bid by reason of their respective interests and necessities.

We think that the cases cited by counsel do not establish such a distinction, for none of them turn upon that point alone. The validity of the contract cannot depend on the price paid at the sale, but must rest on the terms of the agreement. Here no price was agreed upon to be bid, nor is there anything to indicate that each party did not

desire to buy as cheaply as possible. The only inducement to the contract was a prevention of competition, which was expressly agreed upon.

In the case of *Fisher* v. *Transportation Co.*, 136 Mich. 218, a similar promise was held void on the ground that it was contrary to public policy. That case recognizes the rule that, where the circumstances show that the consideration for the promise is, in whole or in part, an attempt to prevent competition at a public sale, the contract is void. That was the express consideration here.

Upon the hearing the testimony showed certain conduct and conversations by and between these parties relating to the delivery and reception of the check, and counsel for the complainant claimed that a new contract was inferable therefrom, and amended his bill to conform to such claim. Upon an examination of the proof we are unable to find any intention on the part of Johnson to make a new contract. If at that time he accepted the check with an intention to deliver the stock, it was, in our opinion, a mere carrying out of the original contract. Even if we could assert the fiction of a legal inference against what we believe the proof shows to have been the fact, it would be an extraordinary spectacle for a court of equity to endeavor thus to avoid the consequences of an illegal contract, so far carried out as to have effected the object of preventing competition. The proof would have to be pretty clear to divorce the subsequent transactions from the earlier, and justify the conclusion that an entirely new and distinct contract was in contemplation by the parties, in no part resting upon the illegal consideration.

We are of the opinion that the learned circuit judge was right in his conclusion that the complainant could not be granted the relief sought.

The decree is affirmed, with costs.

Moore, C. J., and McAlvay, Grant, and Blair, JJ., concurred.