J J ZAYTI TRUCKING, INC v CITY OF DETROIT

Docket No. 72836. Submitted March 19, 1984, at Detroit.—Decided
July 26, 1984. Leave to appeal applied for.

J. J. Zayti Trucking, Inc., was the holder of a contract for rubbish
hauling for the City of Detroit. Zayti declined to exercise its
option to extend the contract and the City of Detroit advertised
for bids on the contract. The two lowest bids received were by a
company owned by Gerald Wiegand and a company owned by
Joan Wiegand, Gerald's wife. Zayti's bid was the next lowest
bid. Zayti charged collusion on the part of the two lowest
bidders. The Detroit Common Council awarded the contract to
Wiegand Trucking Company, the low bidder, owned by Gerald
Wiegand. Zayti and one Detroit councilman filed suit against
the City of Detroit and others in Wayne Circuit Court, alleging
that the two lowest bidders violated the competitive bidding
requirement of the City of Detroit ordinance governing the
awarding of major contracts because they had knowledge of
each other's bids and, therefore, that the contract awarded to
Wiegand was void. The court, Maureen Pulte Reilly, J., granted
the City of Detroit's motion for summary judgment on the
ground that there was no genuine issue of material fact.
Plaintiffs appeal. *Held:*

There is no evidence that the two companies submitting the
lowest bids for the contract engaged in collusion. Collusion will
not be assumed merely because of the marital status of the
owners of the companies or because the mother of one of the
owners acted as secretary of both companies and signed the
noncollusion statement in each company's bid.

Affirmed.

M. J. Kelly, P.J., dissented. He would reverse, holding that
the trial court erred in ruling that plaintiffs' complaint did not

References for Points in Headnotes

[1] 17 Am Jur 2d, Contracts § 174.
[2] 64 Am Jur 2d, Public Works and Contracts §§ 64, 76.
  Right of public authorities to reject all bids for public work or
  contract. 31 ALR2d 469.
[3] 37 Am Jur 2d, Fraud and Deceit § 1.
[4] 64 Am Jur 2d, Public Works and Contracts §§ 31, 37.

state a cause of action from which a trier of fact could find collusion between the two lowest bidders and that the contract should be voided as a matter of public policy.

### Opinion of the Court

1. Contracts — Public Policy.

The question whether a contract is against public policy depends upon its purpose and tendency, and not upon the fact that no harm results from it; in other words, all agreements the purpose of which is to create a situation which tends to operate to the detriment of the public interest are against public policy and void, whether in the particular case the purpose of the agreement is or is not effectuated, and for a particular undertaking to be against public policy actual injury need not be shown; it is enough if the potentialities for harm are present.

2. Contracts — Public Contracts — Presumption of Good Faith.

The exercise of discretion to accept or reject public contract bids will be controlled by the courts only when necessary to prevent fraud, injustice or the violation of a trust; the courts will indulge the presumption that the authorities acted in good faith in awarding the contract.

### Dissent by M. J. Kelly, P.J.

3. Fraud — Collusion.

*Collusion is an agreement between two or more persons to defraud another of his rights by the forms of law or to secure an object forbidden by law.*

4. Contracts — Collusion.

*A trial court erred in ruling that a complaint did not state a cause of action from which a trier of fact could find collusion between the two lowest bidders on a public contract where, of the two companies submitting the lowest bids, one was owned by a man and the other was owned by his wife, both operated from the same location, the bids of each were in the same handwriting and the mother of one of the owners acted as secretary of both companies and signed noncollusion statements in the bids of both companies.*

*Draugelis, Ashton, Scully & Haynes* (by *Edward Draugelis*), for plaintiff.

*Donald Pailen,* Corporation Counsel, *Mark R.*

*Ulicny,* Deputy Corporation Counsel, and *Darryl F. Alexander* and *Roberta G. Walden-Shipp,* Assistants Corporation Counsel, for defendants.

Before: M. J. Kelly, P.J., and Beasley and J. N. O'Brien,* JJ.

Per Curiam. Plaintiffs, J. J. Zayti Trucking, Inc., and Detroit Councilman Jack Kelly, appeal from an order granting to defendant, City of Detroit, summary judgment pursuant to GCR 1963, 117.2(3).

Plaintiff Zayti, an unsuccessful bidder on a contract for rubbish hauling, sued defendant city to void the contract which had been awarded to the low bidder, Wiegand Trucking Company. The basis of plaintiff's lawsuit was an allegation that the two lowest bids were made collusively because one was made by an entity (Wiegand Trucking Company) owned by a husband, Gerald Wiegand, and the other by an entity (J & H Transportation) owned by his wife, Joan Wiegand.

Plaintiff Zayti had held the contract since May, 1981, and was paid $10.84 per ton to haul rubbish. When Zayti declined to exercise its option to extend the contract, defendant city re-advertised the contract and received the following bids:

Wiegand Trucking      — $10.84/ton
J & H Transportation  — $11.25/ton
Zayti Trucking        — $11.44/ton
James P. Barkman      — $11.47/ton

Plaintiffs alleged collusion. The Common Council of defendant City of Detroit voted to re-advertise the contract. However, the matter was resubmitted to the Common Council by defendant's purchasing department. This time, the council voted

---

* Circuit judge, sitting on the Court of Appeals by assignment.

to award the contract, which was worth approximately $4 million, to Wiegand Trucking Company. After investigation by defendant's law department, defendant concluded there was no collusion.

With respect to the motion for summary judgment, the trial court ruled:

"I find that in this case, discussion of prices, and even bids, between prospective bidders who happen to be husband and wife, and the fact that the husband and wife may eventually share their independent business profits by reason of their marital relationship, without more, is not a sufficient basis for finding that the prospective bidders were in collusion to perpetrate a fraud on the bidding system. Under the circumstances alleged in this case the bids of Wiegand and J & H do not violate Section 6.306 of the Detroit City Charter, or the bidding requirements of the purchasing ordinance of the City of Detroit, particularly Sections 21-3-1 and 21-3-2 (B)(1). I believe subsection B1. There are no allegations to support a claim of actual inferred collusion. As I understand there are no issues of fact to be determined."

On appeal, the parties agree there is not any issue of material fact.

By ordinance, the City of Detroit requires competitive bidding for all contracts which are "major", and that such contracts be awarded to the lowest responsible bidder. Basically, the procedure utilized by defendant city is contained in Ordinance 52-H, § 21-3-1, which defines the lowest responsible bidder as follows:

"* * * that bidder who submits the lowest bid, conforming to specifications, as evaluated * * *, and who is qualified by meeting the following standards as they relate to the particular contract under consideration:

"The prospective contractor must demonstrate that he:

\* \* \*

"(6) Is otherwise qualified and eligible to receive an award under applicable laws, ordinances and regulations; \* \* \*."

Defendant city admits that if collusion existed between the two lowest bidders, then neither would meet the definition of the "lowest responsible bidder" because of inability to satisfy subsection (6) set forth above. Specifically, plaintiffs claim that Gerald Wiegand, the successful low bidder on the contract, violated the competitive bidding requirement because he and his wife had knowledge of the contents of each other's bids and that, therefore, the contract is void.

The parties appear to agree that if there was an agreement to fix the prices bid by the two lowest bidders, there would be a violation of Michigan's anti-trust act.[1] The reasons for requiring true competitive bidding on public contracts are well stated in McQuillin on Municipal Corporations as follows:

"The provisions of statutes, charters and ordinances requiring competitive bidding in the letting of municipal contracts are for the purpose of inviting competition, to guard against favoritism, improvidence, extravagance, fraud and corruption, and to secure the best work or supplies at the lowest price practicable, and they are enacted for the benefit of property holders and taxpayers, and not for the benefit or enrichment of bidders, and should be so construed and administered as to accomplish such purpose fairly and reasonably with sole reference to the public interest. These provisions are strictly construed by the courts, and will not be extended beyond their reasonable purport. Such provisions must be read in the light of the reason for their enactment, lest they be applied where they were not intended to operate and thus deny municipalities au-

[1] MCL 445.701; MSA 28.31.

thority to deal with problems in a sensible, practical
way."[2]

In Michigan, the Supreme Court has stated:

" 'The question whether a contract is against public
policy depends upon its purpose and tendency, and not
upon the fact that no harm results from it. In other
words, all agreements the purpose of which is to create
a situation which tends to operate to the detriment of
the public interest are against public policy and void,
whether in the particular case the purpose of the
agreement is or is not effectuated. For a particular
undertaking to be against public policy actual injury
need not be shown; it is enough if the potentialities for
harm are present.' "[3]

The Supreme Court states that the standard of
review in cases involving public contract bids is as
follows:

" 'The exercise of discretion to accept or reject bids
will only be controlled by the courts when necessary to
prevent fraud, injustice or the violation of a trust. The
court will indulge the presumption that the authorities
acted in good faith in awarding the contract.' "[4]

In the within case, the issue is whether there
are sufficient facts to give rise to a conclusion that
collusion existed as a matter of law between the
low bidders.

In *Westcott Construction Corp v Cumberland*

[2] 10 McQuillin, Municipal Corporations (3d ed), § 29.29, p 302.

[3] *Mahoney v Lincoln Brick Co,* 304 Mich 694, 705; 8 NW2d 883
(1943), quoting 12 Am Jur, § 167, p 664.

[4] *Leavy v City of Jackson,* 247 Mich 447, 450; 226 NW 214 (1929),
quoting 3 McQuillin on Municipal Corporations (2d ed), § 1340, p 919.
See also *Bolt v Muskegon Bd of County Road Comm'rs,* 277 Mich 75,
79; 268 NW 817 (1936).

*Construction Co, Inc,*[5] the Massachusetts Appeals
Court said:

"It is well settled that common ownership and control
of the two corporations, standing alone, is insufficient to
merge them into one or to make either the agent of the
other. *Galdi v Caribbean Sugar Co,* 327 Mass 402, 407-
408 [99 NE2d 69] (1951), and cases cited. *Gordon Chemi-
cal Co, Inc v Aetna Cas & Sur Co,* 358 Mass 632, 638
[266 NE2d 653] (1971). The same is true where the
corporations also occupy common premises. *Browne v
Brockton Nat'l Bank,* 305 Mass 521, 530 [26 NE2d 360]
(1940). Those factors are of importance only where they
combine with others in such a way as to 'permit the
conclusion that an agency or similar relationship exists
between the entitites'. *My Bread Baking Co v Cumber-
land Farms, Inc, supra,* 353 Mass 614, 619 [233 NE2d
748, 752]. *Commonwealth v Beneficial Fin Co,* 360 Mass
188, 290 [275 NE2d 33] (1971), *cert den sub nom Farrell
v Massachusetts,* 407 US 910 [92 S Ct 2433; 32 L Ed 2d
683] (1972), and *sub nom Beneficial Fin Co v Massachu-
setts,* 407 US 914 [92 S Ct 2433; 32 L Ed 2d 689] (1972)."

In *Westcott,* the court also ruled that common
ownership and control of the two corporations and
use of the common business premises were insuffi-
cient to show an agency or similar relationship,
the court stating:

"While the parties have stipulated that Westcott
Construction and Westcott Equipment 'are part of a
common enterprise', the only facts present which bear
on their manner of conducting that enterprise are that
they both bid on the same project and that their assets
are 'pooled' for bonding purposes. Those facts fall short
of suggesting 'a confused intermingling of activity' by
the two corporations, or any 'substantial disregard of
[their] separate [corporate] nature', or any 'serious am-
biguity' as to which corporation is acting, or treatment
of Westcott Equipment by Westcott Construction as 'a

---

[5] 3 Mass App 294, 297; 328 NE2d 522 (1975).

mere agent or department' of the latter, within the meaning of any of the cases quoted above." (Footnote omitted.)[6]

In the within case, while the two companies, Wiegand Trucking and J & H Transportation, are closely related, there is not any showing that they colluded on the bid from the facts which have been asserted.[7] We are aware that the mother of Gerald Wiegand, Rita Wiegand, who works as secretary to both companies, signed the noncollusion statement in each bid, and we recognize that it is entirely possible that the principals of each company were privy to each other's bid. However, in so noting, we also note that the low bidder to whom this contract was let was substantially lower than any other bidder.

On the record which was before the trial court on the motion for summary judgment, which included the affidavits, depositions and pleadings, we see no basis for concluding that collusion between the two low bidders existed. We will not assume collusion occurred merely because of the marital status or common business premises of the Wiegands. Under the circumstances of this case, we decline to interfere with the conclusion of the trial judge that plaintiffs have failed to state a cause of action on this record that would require setting aside of the contract entered into with the low bidder.

Affirmed.

---

[6] *Westcott, supra,* p 299.

[7] In contrast, we note that in the leading Michigan case on point, *Twiss v Port Huron,* 63 Mich 528; 30 NW 177 (1886), which found an agreement to stifle competitive bidding void as against public policy, there was clear evidence of collusion between the two lowest bidders. See, also, *Hannah v Fife,* 27 Mich 172 (1873), and *Fletcher v Johnson,* 139 Mich 51; 102 NW 278 (1905).

M. J. KELLY, P.J. *(dissenting)*. I reluctantly dissent. (My reluctance is engendered not by the legal question presented, but by the fact that the courts have been forced to deal with the burden of these proceedings by the plaintiffs who incurred no detriment and will receive no benefit.)

"Collusion is an agreement between two or more persons to defraud another of his rights by the forms of law or to secure an object forbidden by law." 37 Am Jur 2d, Fraud and Deceit, § 1, p 20. (Footnote omitted.)

It is abundantly clear to me that the city ordinance requires competitive bidding. I cannot condone as competitive the bidding between Wiegand Trucking and J & H Transportation. They are not only intertwined, they are wed. Rita Wiegand, the mother of Gerald Wiegand (Wiegand Trucking) is secretary of both companies. She signed the non-collusion statement in each bid. I cannot sanction as competitive, bidding between contractors which reveal the husband in one company, the wife in the other company, and the mother in between conducting the bidding and putting up a facade of arms-length dealing. It turns my judicial stomach. Before that, it sticks in my judicial gullett. I cannot swallow it.

The majority states the issue to be "whether there are sufficient facts to give rise to a conclusion that collusion existed as a matter of law between the low bidders". This was a summary judgment! I would not normally chide my learned brethren or reproach a particularly learned and respected trial judge. In this case, however, the result got in their eyes. The low bidder was substantially lower than any other bidder and accordingly, the city saved some hard-to-come-by tax money. Nevertheless, this contract should be

voided as a matter of public policy. I would hold
that the trial court erred in ruling that the com-
plaint did not state a cause of action from which a
trier of fact could find collusion between the two
lowest bidders. I quote from the second amended
complaint.

"7. That upon examination, it appeared that Wiegand
Trucking Company is owned by Gerald Wiegand and
that J & H Transportation is owned by his wife, Joan
Wiegand; that both companies operate from the same
location; that the bids were in the same handwriting;
that the agreement to purchase new equipment from
Steco Sales lists the same equipment on the same letter
for each company; that it appears that the letter from
Steco Sales was originally addressed to Wiegand Truck-
ing and altered to be used for the J & H Transportation
bid; that the bid of Gerald Wiegand was listed as being
minority owned when, in fact, it was not and is not a
minority company."

\* \* \*

"17. That the bids of J & H Transportation and
Wiegand Trucking Company violated the precondition
set by the codefendant, City of Detroit, to the effect that
such bids must be 'made without collusion with any
other person, firm, or corporation making any other
proposal' for the reason that each of the bidders knew
what the other bid was; the companies are not, in fact,
competing companies; and the owners of the companies
are, in fact, related (husband and wife)."

I would reverse. I would reverse quickly, unhesi-
tatingly, and emphatically.