## In re BLAKE.

(Circuit Court of Appeals, Eighth Circuit. November 8, 1906.)

No. 70.

1. BANKRUPTCY—JURISDICTION OF CONTROVERSY OVER CHOSE IN ACTION.

A court of bankruptcy may acquire by consent of all the parties in interest jurisdiction to determine a controversy between the trustee and an adverse claimant concerning an indebtedness of a third party and the lawful power to adjudicate all the claims of the parties thereto and to enforce their rights against each other by decree and execution.

2. EQUITY—COMPLETE RELIEF—COURT WHICH HAS JURISDICTION GRANTS.

A court of equity which has acquired jurisdiction of the subject-matter and of the parties to a controversy may, and it should, grant complete relief, to the end that litigation over it may cease and a multiplicity of suits may be avoided.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 19, Equity, § 104.]

3. PRACTICE—AGREED STATEMENT OF FACTS WAIVES FORM OF PROCEEDING AND DEFECTS IN PLEADING.

The submission to a court for adjudication upon an agreed statement of facts without more of a controversy of which and of the parties to which the court has jurisdiction waives all objections to the form of the proceeding and to technical defects in the pleadings.

4. CONTRACTS—COMPETITION—SUPPRESSION FRAUDULENT AND RENDERS PUBLIC SALE VOIDABLE.

A combination of bidders, whereby competition at a public sale required by law is suppressed, is a fraudulent conspiracy in restraint of trade contrary to public policy, and it renders any contract or transaction of a vendor induced thereby voidable at his election and vests in him the right to recover of any of the conspirators the value of all the benefits he has received thereunder.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 11, Contracts, §§ 655, 656.]

5. BANKRUPTCY—TRUSTEE HAS RIGHTS OF BANKRUPT ONLY IN ABSENCE OF FRAUD AND LEVY.

A trustee in bankruptcy in cases unaffected by fraud, and wherein no attachments and executions have been levied upon the property of the bankrupt, stands in the shoes of the latter and has no higher or better rights.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 6, Bankruptcy, § 193.]

6. SAME—JURISDICTION — WAIVER — SUPPRESSION OF COMPETITION — TRUSTEE'S RIGHTS—FACTS—CONCLUSION.

A trustee in bankruptcy and a county each claimed to recover an indebtedness of a bank for $16,000, the consideration of which was credits transferred to it by the bankrupts pursuant to an executed agreement to suppress competition in bidding for the use of the county deposits and to divide them. The bank filed a bill in the bankruptcy court wherein it set forth the claims of the county and the trustee, offered to deposit the $16,000 in court, and prayed to be discharged. The claimants filed answers in which they pleaded their claims and asked to recover the $16,000. They then made an agreed statement of facts and stipulated that their claims should be determined by the court upon this statement of facts. The court considered the statement, held that the county was entitled to the $16,000, and ordered the bank to pay it over to the county. The trustee presented a petition for revision.

*Held*, the adjudication in bankruptcy, the controversy between the trustee and the county, and the consent of the parties conferred jurisdiction upon the court to hear the issues upon the agreed statement of facts and to render the judgment, and there was no error in the proceedings nor in the conclusion which had not been waived by the trustee.

(Syllabus by the Court.)

On Petition for Review.

See 145 Fed. 649.

The statutes of Missouri imposed upon the county courts of that state the duty to let the use of the surplus moneys of the counties to the banks or bankers who would pay the highest rates of interest for the deposits. The county court of Henry county advertised for bids for the use of its surplus funds accordingly. Salmon & Salmon, bankers, the Citizens' Bank of Clinton, and two other banks agreed, for the purpose of preventing competition in the sale of the use of these funds, that Salmon & Salmon and the bank of Clinton only should bid for it, that the latter should submit a lower agreed bid than the former, that Salmon & Salmon should in this way secure the use of the county deposits for two years, and that they should divide this use between the four banks in agreed proportions. This scheme was successfully executed. The funds of the county were deposited with Salmon & Salmon from June 1, 1903, until June 20, 1906, when that bank became insolvent and ceased business, pursuant to their bid under this plan. When they ceased business the Clinton bank was indebted in the sum of $16,000 in consideration of credits which had been transferred to it by Salmon & Salmon on account of the deposits of the county which Salmon & Salmon had obtained pursuant to the agreement to suppress competition and divide the deposits. At that time Salmon & Salmon were indebted to the county in the sum of $63,976.77. They were adjudged bankrupts on January 19, 1906, and the petitioner, Daniel F. Blake, was chosen trustee. This trustee claimed that the Clinton bank should pay this debt of $16,000 to him for the benefit of the general creditors of the bankrupts, and Henry county insisted that the bank should pay this sum to the county. Thereupon the Clinton bank filed a petition in the court of bankruptcy below, wherein it set forth the foregoing facts and claims, offered to pay the $16,000 into the court, and prayed that the county and trustee might be required to interplead, that the court would determine to which party the money should be paid, and that the bank might be discharged from further liability upon the payment of the $16,000 into the court. No order appears to have been made upon this petition, but Henry county and the trustee voluntarily filed answers to the petition of the bank, and, each prayed for a judgment that the bank should pay the debt of $16,000 to them respectively. They then made a written stipulation of the facts which they submitted to the court and agreed therein "that the controversy now existing between the said county of Henry and Daniel F. Blake as such trustee, concerning the right and title to the sum of sixteen thousand dollars now held by the said Citizens' Bank of Clinton, and standing to the credit of said Salmon & Salmon upon the books of said bank, and which is claimed by both the said county of Henry and the said Daniel F. Blake as such trustee, may be heard by the court and determined" upon the stipulation. The court heard the case upon this agreed statement of facts, found that the $16,000 should be paid to Henry county, and ordered the bank to pay it over. The trustee Blake has presented a petition for a revision of this decision.

Edwin A. Krauthoff (Isaac P. Ryland, C. I. Davis, Ball & Ryland, Mann & Daniel, Edward C. Crow, and Karnes, New & Krauthoff, on the brief) for petitioner.

James D. Lindsay (John I. Hinkle, on the brief) for respondent Henry county.

Before SANBORN and VAN DEVANTER, Circuit Judges.

SANBORN, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The chief complaint of the trustee Blake in this case is that his right to recover this $16,000 of the Clinton Bank has been determined by the court of bankruptcy in the absence of pleadings that would be im-

pregnable to attack in an independent suit of interpleader. His counsel argue that the bill of interpleader should have been dismissed because it presents the theory that the county claims the $16,000 as a trust fund, while the facts show that the bank is a debtor and not a trustee on account of this transaction, because it shows that the same thing is not claimed by both Henry county and the trustee, that the bank is not without interest in the subject-matter of the controversy, and that it has incurred independent liability to each of the claimants and because no relief in a suit of interpleader can be based upon claims not presented by the bill, which are subsequently set forth in the pleadings of the claimants. Conceding, without deciding, that each of these positions would be well taken if this were an independent suit and the questions here suggested had been presented in due time, there is a short and conclusive answer to all these objections. It is that they are not here for our consideration, that the petitioner waived them in the proceeding below by pleading to the merits of the case, by praying for a judgment in his favor therein, and by stipulating that the controversy between him and the other parties thereto should be determined upon the agreed statement of facts which he signed without making any objections to the pleadings or to the form of the proceeding, without taking any ruling upon any of these questions, and without saving any exception to any such ruling.

Here was a chose in action, a claim of liability of the Clinton Bank to pay $16,000. The trustee and the county each claimed to own this chose in action. There was therefore a controversy between the trustee and an adverse claimant concerning property claimed by the trustee, and this was a subject-matter of which the court of bankruptcy might lawfully take jurisdiction. Bankr. Act July 1, 1898, c. 541, §§ 2 (7), 23a, 23b, 30 Stat. 545, 552 [U. S. Comp. St. 1901, pp. 3420, 3431]. The trustee, with the consent of the bank, could have maintained a suit against it in the bankruptcy court to enforce his claim, and the county could have intervened therein and have secured a determination of its right to this chose in action and to its proceeds. The jurisdiction, the power, and the duty of the court to determine the controversy in this case was not conditioned by the presentation of any bill of interpleader. It rested upon the adjudication in bankruptcy, upon the existence of the controversy between the trustee and the adverse claimant concerning this chose in action claimed by the trustee and the consent of the parties in interest that the bankruptcy court should determine it. These requisite conditions to the jurisdiction existed. There were the requisite adjudication in bankruptcy, the necessary controversy, and the requisite consent of the parties. And there was in addition the express waiver of the objections to the form of the proceeding and the defects of the pleadings by the agreed statement of facts. The petitioner made an unqualified agreement that the court might determine his claim and this controversy upon the agreed statement of facts which he signed. The court and the other parties in interest here relied upon his contract and determined the controversy upon those facts, and it is now too late for him to be heard upon the technical objections he urges which challenge neither the substantial sufficiency

of the pleadings of the claims adjudged nor the real jurisdiction of the court. His agreement has estopped him from thus experimenting with the courts. The submission to a court upon an agreed statement of facts without objection to the pleadings or to the form of the proceeding of a controversy of which and of the parties to which the court has jurisdiction waives every objection to the form of the proceeding and to technical defects in the pleadings. Saltonstall v. Russell, 152 U. S. 628, 630, 14 Sup. Ct. 733, 38 L. Ed. 576; Fisher v. Knight, 9 C. C. A. 582, 584, 61 Fed. 491, 493; Folger v. Columbian Ins. Co., 99 Mass. 267, 277, 96 Am. Dec. 747; Brettun v. Fox, 100 Mass. 234, 236.

Salmon & Salmon and the Clinton Bank combined together, suppressed competition for the use of the surplus moneys of the county which the law contemplated and required, and thereby procured the county deposits to be made with Salmon & Salmon, in consideration whereof the latter transferred to the Clinton Bank the credit of $16,000, for which it is now indebted. A combination of bidders to suppress competition at a public sale required by law is a fraudulent conspiracy in restraint of trade and contrary to public policy. It renders any contract or transaction of the vendor induced thereby voidable at his election and vests in him the legal right to recover of any of the conspirators the value of all the benefits he has received thereunder. Greenhood on Public Policy, pp. 183–189; 1 Story's Eq. Jur. § 293; Jones v. Caswell, 3 Johns. Cas. (N. Y.) 29, 2 Am. Dec. 134; Doolin v. Ward, 6 Johns. (N. Y.) 194.

Counsel indulge in the discussion of the questions whether or not the deposit in the Clinton Bank was a trust fund which the county could identify and follow, whether or not the Clinton Bank was a partner of Salmon & Salmon in the securing of the deposits of the county, whether or not it was liable with them as a joint tort-feasor for the entire $63,976.77, which they still owe to the county, and whether or not Salmon & Salmon were the agents of the bank in procuring for it the credit on account of which it owes the $16,000. But in the case before us in which no claim was made against the bank for more than $16,000, these are academic questions whose consideration and decision are unnecessary to the determination of the crucial issue it presents, and for that reason they are here dismissed without debate or determination. The liability of the bank to pay this $16,000 to the county stands on broader ground. It rests upon the indubitable principle that whoever knowingly receives money, property, or benefit from another through the fraud of a third is always liable to restore it or its value. Bridgeman v. Green, Wilmot's Rep. 64; Huguenin v. Baseley, 14 Ves. 288, 289; Gordon v. McCarty, 3 Whart. (Pa.) 407, 411; Commonwealth v. Call, 21 Pick. (Mass.) 515; Tuckwell v. Lambert, 5 Cush. (Mass.) 23. By so much the more is he liable when he participates himself in the perpetration of the fraud. All the credits on account of which the Clinton Bank owes this $16,000 were obtained by it in consideration of its fraudulent combination with Salmon & Salmon by means of which they obtained corresponding deposits from the county. From this fraud upon the county it has derived a benefit of $16,000, and the court below rightfully adjudged that it should pay the value of this benefit to the county.

The trustee can maintain no cause of action against the Clinton Bank to recover this money, because the consideration of the bank's agreement to pay this $16,000 to Salmon & Salmon entirely fails, and it is thereby released from that obligation when the county urges and maintains its right to avoid its contract and transaction with Salmon & Salmon and to recover this indebtedness from the bank.

The contention that, although Salmon & Salmon could not have maintained a claim to this chose in action against the county, yet the trustee may do so because he is invested with the rights of attachment and execution creditors of the bankrupt at the time of the filing of the petition in bankruptcy who might have levied upon this property, and the authorities cited in support of this position. (In re Tweed [D. C.] 131 Fed. 355, 358; In re Butterwick [D. C.] 131 Fed. 371, 372; In re Fraizer [D. C.] 117 Fed. 746; In re Rabenau [D. C.] 118 Fed. 471, 479), are answered by the decisions of the Supreme Court in York Mfg. Co. v. Cassell, 201 U. S. 344, 352, 26 Sup. Ct. 481, 50 L. Ed. 782; Hewit v. Berlin Machine Works, 194 U. S. 296, 24 Sup. Ct. 690, 48 L. Ed. 986, and Thompson v. Fairbanks, 196 U. S. 516, 25 Sup. Ct. 306, 49 L. Ed. 577, that:

"Under the present bankrupt act the trustee takes the property of the bankrupt, in cases unaffected by fraud, in the same plight and condition that the bankrupt holds it, and subject to all the equities impressed upon it in the hands of the bankrupt."

The claim of Salmon & Salmon against the Clinton Bank was founded in fraud and liable to be defeated at any time by the discovery of this fraud and the assertion of the right to recover of the bank by the county. This claim passed to the trustee subject to that fatal defect which has now destroyed it. The county had a cause of action to recover this $16,000 of the bank. The enforcement of this cause of action deprived the agreement of the bank to pay this $16,000 back to Salmon & Salmon of its entire consideration and thus destroyed the right to enforce it.

The objection that the judgment in favor of the county and against the bank is erroneous because the court below would have had no jurisdiction of an original action between them cannot be sustained. While no such action was maintainable in that court, the proceeding in bankruptcy was a proceeding in equity. The court below sitting in equity had plenary jurisdiction of the trustee and of his claim to recover the $16,000 of the bank, of the controversy between the trustee and the county concerning this chose in action which the trustee claimed, and of the trustee, the bank, and the county, each of whom had consented and requested that the court would determine all their claims which had relation to this subject-matter. The power is conferred and the duty is imposed upon a court of equity which has acquired jurisdiction of the subject-matter and of the parties to a controversy to consider and determine all the rights and claims of the parties relating to the subject-matter and to enter a decree that will finally determine and enforce their rights against each other to the end that a multiplicity of suits may be avoided and litigation may cease. Hopkins v. Grimshaw, 165 U. S. 342, 358, 17 Sup. Ct. 401, 41 L. Ed. 739; Sunflower Oil Co.

v. Wilson, 142 U. S. 313, 325, 12 Sup. Ct. 235, 35 L. Ed. 1025; Ward v. Todd, 103 U. S. 327, 329, 26 L. Ed. 339.

The order that the bank pay the $16,000 to the county was within the jurisdiction of the court, the petition for revision disclosed no error of law in the proceedings which culminated in this judgment, and the petition is accordingly dismissed.