## In re KORNIT MFG. CO.

(District Court, D. New Jersey. December 9, 1911.)

1. BANKRUPTCY (§ 224*)—JURISDICTION—REFEREE—"COURT"—"PERSON."

Bankr. Act July 1, 1898, c. 541, § 1, cl. 7, 30 Stat. 544 (U. S. Comp. St. 1901, p. 3419), provides that the term "court" shall include a referee, and clause 19 declares that the word "persons" includes corporations and officers. By section 2, cl. 7, bankruptcy courts are invested with such jurisdiction in law and in equity as will enable them to exercise original jurisdiction in bankruptcy proceedings to cause the estates of bankrupts to be collected, reduced to money and distributed, and to determine controversies in relation thereto, except as otherwise provided, and section 23, par. "a," confers jurisdiction on the United States Circuit Courts in certain circumstances over controversies between trustees and adverse claimants concerning property claimed by the trustee, except as to proceedings in bankruptcy, jurisdiction over which rests exclusively in bankruptcy courts, and by paragraph "b" suits brought by the trustee, except those to recover property under certain specified sections of the act, can be brought in the bankruptcy court only by consent of the proposed defendant. *Held*, that a referee in bankruptcy had jurisdiction of a proceeding to compel the officers of a corporation to pay over the proceeds of stock sales alleged to belong to the corporation, and also to pay an amount assessed against them for unpaid shares.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 224.*

For other definitions, see Words and Phrases, vol. 2, pp. 1672–1682; vol. 8, p. 7622; vol. 6, pp. 5322–5335; vol. 8, p. 7752.]

2. BANKRUPTCY (§ 224*)—JURISDICTION—ACCOUNTING.

Where an officer of a bankrupt corporation voluntarily appeared as a party to the bankruptcy proceedings, and filed a claim for moneys loaned to the corporation in carrying on its business, he thereby subjected himself to the dominion of the court, so that a referee had jurisdiction of his person to investigate and adjudicate an indebtedness due from such officer to the corporation.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 224.*

Jurisdiction of federal courts in suits relating to bankruptcy, see note to Bailey v. Mosher, 11 C. C. A. 313.]

3. BANKRUPTCY (§ 224*)—JURISDICTION—ANSWER—MERITS.

Where, in a proceeding by the trustee of a bankrupt corporation against its officers to compel an accounting, they answered to the merits, they thereby waived any objection to the referee's jurisdiction over their persons.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 224.*]

4. BANKRUPTCY (§ 293*)—"ADVERSE CLAIMANTS."

Where a petition was filed by the trustee of a bankrupt corporation against two of its officers in their official capacity to compel them to

pay over money alleged to belong to the corporation, and received by them as the proceeds of a sale of certain of the corporation's stock, and also for an amount assessed against them for unpaid stock, and it appeared that they had controlled the corporation absolutely from its inception, and that the other incorporators and first board of directors were but their dummies, they could not be regarded as adverse claimants in determining the jurisdiction of the bankruptcy court.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 293.*

For other definitions, see Words and Phrases, vol. 1, p. 223; vol. 8, p. 7567.]

**5.** BANKRUPTCY (§ 250*)—CORPORATIONS—STOCK SALES.

Where, in bankruptcy proceedings against a corporation, it appeared that two of its officers had received a large part of the proceeds of the sales of its treasury stock for which they had not accounted to the corporation, and the referee thereupon charged them with the total par value of such stock, and the several issues which they obtained from another and sold, while the evidence disclosed that some part of the treasury stock had not been sold, and that such parties had advanced moneys to the company, which it used to pay its legitimate expenses, it was error not to credit defendant with the amount so unsold, and also with the moneys so advanced.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 250.*]

**6.** BANKRUPTCY (§ 228*)—HEARING—REMISSION TO REFEREE.

Where, in proceedings to compel the officers of a bankrupt corporation to turn over money alleged to belong to it and received by them as the proceeds of stock sales, there was no evidence that one of the defendants had any property at the time the order was made, the trustee and the referee relying on a stipulation which they believed incorporated such evidence in another proceeding as a part of the proof in the turn-over proceeding, the same would be remanded to the referee and an opportunity given to adduce proof on the issue of the defendant's possession of the property.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 228.*]

**7.** BANKRUPTCY (§ 250*)—CORPORATIONS—OFFICERS—SURRENDER OF FUNDS.

Where, in proceedings against a corporation, it was conceded that one of its officers had no property over which an order requiring him to turn over money alleged to belong to the corporation could be enforced, that part of the order directing him to pay over the money would be eliminated.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 250.*]

**8.** CORPORATIONS (§ 343*)—OFFICERS—FRAUD—JOINT AND SEVERAL LIABILITY.

Where two of the officers of a bankrupt corporation were joint adventurers in the incorporation of the bankrupt, and in the manipulation of its capital stock, and were joint tort-feasors in the fraud perpetrated on the public in marketing the stock, they were jointly and severally liable.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 343.*]

In the matter of bankruptcy proceedings of the Kornit Manufacturing Company. On petition to review two orders, one directing Charles E. Ellis and Erwin R. Graves to pay over to the trustee $395,-130.77, money alleged to be held by them belonging to the bankrupt, and the other to pay over $273,110, the amount assessed against them for unpaid shares of stock. The turn-over proceedings remanded, and action on stock assessment ordered deferred.

John J. Vause, for Charles E. Ellis.
Joseph Cunningham, for Erwin R. Graves.
Julius H. Cohen, for Trustee.

RELLSTAB, District Judge. Both of these orders cannot stand. They are based upon the same state of facts, but the findings are variant and inconsistent. The first order directs the payment over of $395,130.77, of which the sum of $371,674.50 is the total receipts from the sale of the capital stock of the bankrupt. To sustain the order as to the latter amount, the referee had to find that the shares so sold by the respondents were the property of such corporation; and, as to the second, that such stock was owned by them, but not paid for. Either order may, but both cannot, stand.

In my judgment the so-called turn-over order can be sustained, though not for the amount found. The jurisdiction of the referee to make such order is challenged upon the ground that neither he nor the United States District Court had jurisdiction over the subject-matter of such petition, and that both Ellis and Graves are adverse claimants, and have never consented to such jurisdiction.

The proceedings resulting in such order were begun by the filing of a petition praying:

"That an order may be made herein fixing and determining the amount due your petitioner from said Ellis and said Graves, as officers of the corporation, and for an order requiring them to show cause why they should not pay over the same to your petitioner, and for an order requiring them to pay to your petitioner such sum of money so fixed and determined by this court, and for such other and further relief in the premises as to the court may seem proper."

Thereupon the referee made an order directed to Ellis as president and Graves as vice president and manager of such bankrupt, requiring them to show cause why the order prayed for should not be made. In response thereto respondents, respectively, filed their answers, in which, after protesting the jurisdiction of the referee and the United States District Court over the subject-matter of said petition, they admitted some of the allegations of said petition, disclaimed knowledge as to others, denied the remainder, and set up in great detail facts relating to the subject-matter of such petition as a defense to the charges therein made, praying that such petition be dismissed, and for such other and further relief therein as may be just and proper.

[1] The United States District Court, including the referee, has jurisdiction over both the subject-matter and the persons involved in this controversy. So far as the subject-matter is concerned, the referee clearly had jurisdiction by virtue of the provisions of the bankrupt act. By section 1, cl. 7, of said act, "court" includes the referee; and by clause 19 "persons" includes corporations and officers. By section 2, cl. 7, the courts of bankruptcy are invested with such jurisdiction at law and in equity as will enable them to exercise original jurisdiction in bankruptcy proceedings to "cause the estates of bankrupts to be collected, reduced to money and distributed and determine controversies in relation thereto, except as herein otherwise provided."

To find the exceptions therein referred to a reference to section 23 is necessary. By paragraph "a" of this section, jurisdiction is given to the United States Circuit Courts in certain circumstances over controversies between trustees and adverse claimants concerning

property claimed by the trustee, except as to "proceedings in bankruptcy," the jurisdiction over which proceedings, by necessary implication, resting exclusively in the bankruptcy courts. By paragraph "b" of this section suits brought by the trustee, except those for the recovery of property under certain specified sections of the act, can be brought in the bankruptcy court only by consent of the proposed defendant. The proceedings begun against these respondents were for the very purpose of collecting assets belonging to the bankrupt, and, even without the express statutory authorization to "determine controversies in relation thereto" (Bankr. Act, § 2, cl. 7), such power would inhere in the court (unless expressly excepted) chargeable with the collection and distribution of bankrupts' estates. Such proceedings are not controversies distinguished from proceedings in bankruptcy, but are, in fact, such last-mentioned proceedings. Clay v. Waters, 178 Fed. 385, 101 C. C. A. 645.

[2] Previous to the filing of this petition, Ellis had filed with the referee a claim against the bankrupt for the sum of $15,448.47 for moneys loaned and advanced to it in the carrying on of its business. By presenting such claim he became a party to such bankruptcy proceedings, and subjected himself to the dominion of the court. Wiswall v. Campbell, 93 U. S. 347, 23 L. Ed. 923. In the investigation and determination of Ellis' claim a consideration of practically all of the transactions between him and the bankrupt became necessary. These transactions are the basis underlying the turn-over order which he now challenges. That the controversy between the trustee and Ellis took on a larger scope than contemplated by him and was changed from a mere investigation as to whether anything was due to claimant, to a plenary suit instituted against him in the nature of an accounting, makes no difference to the jurisdiction of the court. Having by his voluntary appearance as a party in the bankruptcy proceedings submitted himself to the jurisdiction of the court, it was the duty of the court, upon the filing of the trustee's petition asserting a counterclaim based on the same transaction, to proceed to a final hearing and determination of the whole controversy. In re Blake, 150 Fed. 279, 80 C. C. A. 167.

[3] The answers filed by both respondents, as already noted, challenge the jurisdiction of the court as to the subject-matter of the controversy. They do not expressly dissent from the court's taking jurisdiction on the ground that they are adverse claimants in respect to the property sought to be turned over. Inferentially they do, and perhaps this would satisfy the statute (section 23b) as far as Graves is concerned, he not having presented any claim to the referee nor in any way submitted himself to the court's jurisdiction, were it not for the fact that their answers go to the merits of the controversy. By doing this respondents are estopped from questioning the court's jurisdiction over them. It is elementary law that neither at law nor in equity can a challenge to the jurisdiction be joined with a defense to the merits. When this is done, the court will disregard the objection to the jurisdiction, and put the defendant to his defense.

[4] What has been premised on the subject of jurisdiction is on

the assumption that respondents, in fact, are adverse claimants. But are they? The trustee's petition was filed against Ellis and Graves not individually, but as officers—agents—of the bankrupt, and the allegations of the petition were that this property sought to be recovered was in their hands as such. The bankrupt corporation was the conception of the respondents, and they exercised a complete unbroken dominancy over it from its birth to the filing of the petition in bankruptcy. This dominancy was as complete before as after they became its officers, and what was done by the incorporators and first board of directors is as much their acts as what was done by respondents after they became the executive officers, and numerically controlled the board of directors. These incorporators and first board of directors were but the tools of the respondents. On the paper they were free and independent, but in fact only dummies responsive to the beck and call of respondents. In such circumstances, respondents, with respect to property obtained by them through the action of such dummy directors, are not adverse claimants. They were its mind, hands, and pockets, and will be treated in the bankruptcy court as if they were the bankrupt, and amenable to its jurisdiction with reference to such property. In re Royce Dry Goods Co. (D. C.) 133 Fed. 100, 13 Am. Bankr. Rep. 257; In re Muncie Pulp Co., 139 Fed. 546, 71 C. C. A. 530, 14 Am. Bankr. Rep. 70; In re Holbrook Shoe & Leather Co. (D. C.) 165 Fed. 973, 21 Am. Bankr. Rep. 511; Alpin & Lake Cotton Co. (D. C.) 131 Fed. 824, 12 Am. Bankr. Rep. 653; In re White, 177 Fed. 194, 101 C. C. A. 364, 24 Am. Bankr. Rep. 197.

The court having jurisdiction over the respondents as well as the subject-matter, the remaining question is whether the facts justify the finding of the referee. The testimony amply justifies the conclusion reached by the referee that respondents were the dominant force in the incorporation and organization of the bankrupt; its purchase of the Bierich patents from Jones; the issuing of $499,000 par value, being all of the authorized capital stock of the company, less $1,000 held by the incorporators, and the $25,000 in notes, as consideration for such purchase; the subsequent turning into the treasury of $200,-000 of such capital stock, and the making of the contract with Ellis for the sale of such treasury stock on a 40 per cent. commission; also that the turning over to Ellis of $74,000 and to Graves of $72,500 par value by Jones of the capital stock issued to him as aforesaid was in pursuance of an agreement between such persons prior to the incorporation of such company.

[5] These and other facts in the case amply justify the referee's findings that the shares of capital stock sold by respondents, including those obtained by them from Jones, as well as the treasury stock, was the company's stock, for which they are accountable to the trustee. The referee has charged up against the respondents the total par value of the treasury stock and the several issues of stock which the respondents obtained directly from Jones, while the evidence discloses that some part of the treasury stock has not been sold. The referee has allowed respondent no credits upon these sales, disregarding not only the contract that the company made with Ellis as to

compensation for the sale of treasury stock, but also the moneys expended by the company in its legitimate operations, including those incident to its futile negotiations to secure license to manufacture under such patents on a royalty and the installation of a plant, first, to demonstrate the commercial value of its patented product, and, second, in anticipation of its own manufacture thereof. These expenses were admittedly of considerable amount, and were paid out of moneys obtained from Ellis. While the evidence shows that these respondents conspired to perpetrate a fraud in the sale of such stock, and actually sold such stock in carrying out such fraud, it fails to show that such incorporation and purchase of such patent and the division of the capital stock issued in consideration thereof was part of such fraudulent scheme. On the contrary, the evidence tends to show, and I concur with the referee's conclusion, that the fraud was a subsequent conception. To my mind its birth was concurrent with a time more than a year after the incorporation when it was made manifest that the company could not secure license, and that the patented product was probably a commercial failure.

In my opinion the moneys paid into the company by the respondents and used to meet the legitimate expenses of the company, whether incurred before or subsequent to the beginning of such sales, should be credited to them on such sales of stock. This, as noted, the referee has not done. In the proceeding eventuating in his order levying an assessment upon the capital stock he allows respondents for alleged disbursements the sum of $125,026. These disbursements were made by respondents in the same transactions upon which the turn-over order is based, and it is difficult to understand why, if these disbursements were allowed in the stock assessment proceedings, they were not also allowed in the turn-over proceedings. The referee does direct that on the turn-over order the respondents be credited with any payments they may make under the order in the stock assessment proceedings; but this relates to payments yet to be made, and has no reference to any payments made by respondents before the making of such order. The record brought up on review of the turn-over proceedings will therefore be sent back in order that the proper credits may be made.

[6] On behalf of the respondents, it is contended that there is no evidence in the turn-over proceedings which shows that they had any property at the time of making the turn-over order. There is evidence in the assessment proceedings that Ellis is possessed of property of considerable amount, and the referee in his memorandum says:

"By stipulation between counsel made in open court, and appearing upon the record or transcript of the testimony, it was agreed that any testimony taken in either proceeding should be considered as taken also in the other proceeding, so far as it might apply thereto."

This statement, counsel for the respondents claims, is not the fact, and the stipulation entered on page 1772 of the record, taken literally, supports respondents' contention. Inasmuch as it is admitted that Ellis is possessed of property—and both the trustee and referee evi-

dently relied upon the stipulation referred to as putting into the turn-over proceedings evidence of such possession—an opportunity will be given to prove the possession of such property.

[7] As to Graves, it is conceded by the trustee that he has no property from which a turn-over order could be enforced, and that such part of the referee's order directing him to pay over should be eliminated.

[8] The respondents also attack the finding of the referee that they are jointly and severally liable to account for the sales of such capital stock. The evidence convinces me that they were joint adventurers in the incorporation of the bankrupt and the manipulation of its capital stock and joint tort-feasors in the fraud perpetrated in the marketing of such stock. When parties occupy such relationship they are jointly and severally liable. Clay v. Waters, 161 Fed. 815, 88 C. C. A. 633. The turn-over proceedings will be referred back to the referee for the purpose of making the credits before mentioned, and such others as the evidence now taken or to be introduced by the trustee or the respondents may justify. He will also consider and report whether respondents should be allowed credit for the moneys paid by them to Jones, if any were paid upon the turning over to them of the so-called individual holdings of stock; whether any compensation should be allowed, in commissions or otherwise, for the sale of such stock, or any of it; and, if no compensation, whether they should be reimbursed in whole or in part for expenses necessarily and legitimately incurred by them in making such sales. The referee may also receive proofs of the possession of property by the respondent Ellis, if his contention that the turn-over proceedings do not contain evidence of such fact is correct.

Action upon the stock assessment order will be deferred awaiting final determination on the turn-over proceedings.