## HALL, Com'r of Insurance and Banking, et al. v. SAN JACINTO STATE BANK et al. (No. 997.)

(Court of Civil Appeals of Texas. Beaumont.
Nov. 15, 1923.)

**1. Interpleader ☞1—Nature and purpose stated.**

"Interpleader" is allowed as a substantial right to complainant, who can seek the proper forum, to the end that claimants may settle the contest among themselves in one principal action.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Interpleader.]

**2. Contracts ☞119—County held entitled to money held by former depository as against insolvent successor and banking commissioner.**

An agreement between a county depository and another bank, subsequently appointed depository, to stifle competition in bidding, bid certain amounts, and to keep half the funds deposited with the successful bidder on deposit with the other, being void as in fraud of the law and against public policy, county funds on deposit with the former depository, when its successor, to which they were credited pursuant to such agreement, went into liquidation as insolvent, belonged to the county as against the insolvent bank and the banking commissioner.

**3. Banks and banking ☞75 — Depository, knowing its insolvency when receiving credit for county funds deposited in another bank, not entitled thereto as against county.**

A bank, knowing of its insolvency when it became county depository and received credits for county funds deposited with its predecessor, *held* guilty of such fraud as vitiated the depository contract and entitled the county to recover such funds, as against it and the banking commissioner.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**4. Banks and banking ☞63½—Banking commissioner cannot recover county funds due insolvent county depository from predecesor under fraudulent agreement.**

The banking commissioner, on taking over an insolvent bank, takes its rights only, and, on taking over an insolvent county depository, cannot sue its predecessor for county funds due it under an agreement, the consideration of which failed because of fraud practiced on the county in obtaining the depository contract.

**5. Evidence ☞441(1)—Oral proof of agreement between banks as to amount of bids for selection as county depository held not inadmissible, as varying written contract.**

Oral proof of an agreement between banks as to the amount of their bids for selection as county depository *held* not inadmissible, as varying their written contract to submit bids, divide between them county funds deposited with the successful bidder, and pay their proportional parts of the interest accruing, etc.

**6. Evidence ☞424—Parol evidence rule inapplicable to others than parties to contract.**

The rule preventing variation of written contracts by parol evidence does not apply to others than parties to the contract.

**7. Depositaries ☞11—County held entitled to interest accruing on funds held by former depository after date of insolvent successor's suspension.**

A county *held* entitled to interest on county funds held by a former depository after the date on which its successor, to which they were credited pursuant to a fraudulent agreement by which the latter's depository contract was obtained, was taken over by the banking commissioner as insolvent, though interest on a claim against the assets of the insolvent bank itself could be allowed only to the date of its suspension.

**8. Appeal and error ☞877(2)—Appellants, not affected by award not complained of by party affected, cannot complain.**

Appellants, not affected by an award of interest not complained of by the party affected, cannot complain.

Appeal from District Court, San Jacinto County; J. L. Manry, Judge.

Interpleader by the San Jacinto State Bank against the Shepherd State Bank, in the hands of J. L. Chapman, successor to Ed Hall, as Commissioner of Insurance and Banking, San Jacinto County, and another. From a judgment for defendant County, the other defendants appeal. Affirmed.

Walace Hawkins, Asst. Atty. Gen., for appellants.

J. M. Hansbro and Wm. McMurrey, both of Cold Springs, Baker, Botts, Parker & Garwood, Campbell, Myer & Freeman, and Fuller & Fuller, all of Houston, for appellee.

O'QUINN, J. Appellee, San Jacinto State Bank, of Cold Springs, San Jacinto county, Tex., on October 25, 1921, in the district court of said county, filed its bill of interpleader, making the Shepherd State Bank, of Shepherd, San Jacinto county, Tex., insolvent and in the hands of J. L. Chapman, commissioner of insurance and banking, and A. D. Brown, liquidating agent, and San Jacinto county, parties defendant. In its bill of interpleader it alleged that prior to January 1, 1921, it was the depository of San Jacinto county, and as such depository had on deposit funds of said county amounting to $———; that its contract as depository with said county expired March 21, 1921; that prior to said date, in the manner prescribed by law, the defendant Shepherd State Bank was selected as depository for said county, and executed depository bonds, which were duly approved; that after said Shepherd State Bank was awarded the depository contract, it, not being engaged in the banking business at the county seat of said San Jacinto county, designated the San Jacinto State Bank as its depository and agent to receive deposits and pay out the money at the county seat, as the law directs, and that pursuant to such designation said San Jacinto State Bank executed to said Shepherd State Bank a bond as such depository; that said Shepherd State Bank had gone into liquidation, and was in the hands of the commissioner of insurance and banking and its liquidating agent, and that at the time the said Shepherd State Bank went into liquidation there remained on deposit with it, San Jacinto State Bank, approximately the sum of $15,500 out of funds which were on deposit with it during the time that it was the regularly appointed, qualified, and acting depository of said county, and that by reason thereof said San Jacinto county was contending that it was entitled to said funds, and that neither the Shepherd State Bank, Ed Hall, commissioner of insurance, nor A. D. Brown, his special agent, were entitled to receive same, but that same should be paid over to said San Jacinto county; that the Shepherd State Bank and the commissioner of insurance and A. D. Brown, special agent, were contending that by reason of the Shepherd State Bank's contract with San Jacinto county said fund was the property of said Shepherd State Bank, and they were entitled to the possession of same, to be applied towards the liquidation of the liabilities of said Shepherd State Bank; that efforts to bring about an agreement between said contending parties were unavailing, and that each of said parties was then demanding that it pay said funds to it; that it was unable to determine which of said contending parties was entitled to said funds, but that it was willing to pay over said funds to whomsoever was entitled thereto—and prayed that said contending parties be brought into court, that their respective rights might be judicially determined.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

San Jacinto county, in its answer, fully set up its claim to the deposit. It alleged that on March 21, 1921, the Shepherd State Bank became the depository for said county for the period of two years from April 1, 1921; that at the time said bank was selected as depository said Shepherd State Bank and the San Jacinto State Bank submitted bids under an agreement with each other that stifled competition, and that the successful bidder should maintain one-half of the deposit of the county funds with the unsuccessful bidder, all of which was without the knowledge of the county; that said Shepherd State Bank was insolvent at the time of its designation as county depository, and that such insolvency was unknown to the county, its officers, or agents; that prior to the designation of said Shepherd State Bank as depository said San Jacinto State Bank had on deposit the county and school funds of said county, and that the deposit in question is a part of said funds, which plaintiff San Jacinto State Bank now holds; that said Shepherd State Bank designated said San Jacinto State Bank as its local depository and agent at the county seat, as alleged by plaintiffs; that by reason of the unlawful agreement between the banks relative to the bidding to be appointed depository, the insolvency of the Shepherd State Bank, and the identity of the fund involved, it was entitled to the fund in question, and impleaded the sureties upon the depository bond of the Shepherd State Bank.

The above-mentioned bondsmen answered, admitting that the money belonged to San Jacinto county, and adopted the allegations of said county in its answer, relative to the agreement concerning the bidding for the appointment as county depository, and the insolvency of the Shepherd State Bank, and further alleged that at the time they became sureties on the bond of the Shepherd State Bank they did not know that it was insolvent, but that said fact was well known to the officers of said bank, and, had they known of such insolvency, they would not have executed said bond.

Appellants answered, presenting numerous exceptions to plaintiff's petition, and to the answers of the other defendants, and denied generally the allegations of the plaintiff and codefendants, and appellant J. L. Chapman, commissioner of insurance and banking, specially pleaded that the Shepherd State Bank was the duly appointed county depository of said San Jacinto county, and as such was entitled to all the funds in question, and that said commissioner of insurance and banking, J. L. Chapman, had taken charge of said Shepherd State Bank.

The undisputed facts are:

(1) Prior to March 21, 1921, the San Jacinto State Bank was the depository for San Jacinto county. When it became necessary to select its successor, said county advertised for bids, as required by law, and the San Jacinto State Bank and the Shepherd State Bank submitted bids. Before submitting their bids, the said banks, for the purpose of stifling competition, on February 14, 1921, in writing, agreed between themselves that they each would submit bids for the appointment as depository for said county, and that, regardless of which of them was selected, the one selected would at all times keep on deposit with the other an amount as nearly as possible equal to one-half of said funds, and that each bank would pay its proportional part of the interest falling due to said county, and that all clearing of items should be through the San Jacinto State Bank of Cold Springs, the county seat. Before submitting their bids, the banks agreed between themselves that the San Jacinto State Bank would bid 6½ per cent. and the Shepherd State Bank would bid 6¾ per cent., and that they would cause the Shepherd State Bank to be selected, and on the day that the bids were submitted to the commissioners' court of San Jacinto county the said banks made and entered into another agreement, in writing, that, regardless of which one was selected as depository for the county, it would at all times keep on deposit with the other an amount equal to one-half of the total of said county funds, and that no checks should be drawn upon the other that would decrease such balances below one-half of said fund. The Shepherd State Bank was selected and made bond, and afterwards designated the San Jacinto State Bank, at Cold Springs, the county seat, as its local depository, and it gave bond.

(2) On August 19, 1921, the Shepherd State Bank closed its doors, and was taken in charge by Hon. Ed Hall, commissioner of insurance and banking, for liquidation, and appointed A. D. Brown as special agent in charge. At said date there was on deposit with the San Jacinto State Bank the sum of $15,825.98 of the money belonging to San Jacinto county, which said bank had on deposit at the time the Shepherd State Bank was selected as depository, and which said sum had never been placed in the hands of said Shepherd State Bank, but which had remained in the San Jacinto State Bank, being simply credited to the Shepherd State Bank on the books of the San Jacinto State Bank, under its agreement with the Shepherd State Bank to divide the money of the county into halves with each other.

(3) At the time the Shepherd State Bank submitted its bid to be selected as county depository, and at the time it was so selected, it was insolvent within the knowledge of its officers, but neither San Jacinto county nor any of its officers knew of such insolvency, and, if they had known of such insolvency,

they would not have accepted the bid of said bank.

(4) When the Shepherd State Bank closed its doors and was taken in charge by the commissioner of insurance and banking, San Jacinto county learned of the unlawful agreement that had been made by and between the two banks as to their bids, and also that the Shepherd State Bank was insolvent at the time it was made county depository, and thereupon demanded of the San Jacinto State Bank the return of all moneys that belonged to San Jacinto county which it still held.

(5) The bondsmen of the Shepherd State Bank, at the time they went upon its depository bond, had no knowledge of its insolvency, and, had they so known, they would not have executed said bond.

(6) The San Jacinto State Bank, at the time the Shepherd State Bank was taken over by the commissioner of insurance and banking, had on deposit the sum of $15,825.98, belonging to San Jacinto county, and said sum being claimed by both San Jacinto county and the Shepherd State Bank, and the commissioner of insurance and banking, and his special agent, San Jacinto State Bank, did not know to whom the money should be paid, and, being willing to pay same to the party in law entitled to receive same, and in order to avoid being harassed by the conflicting creditors, and to avoid a multiplicity of suits relative to a matter in which it had no interest, filed the interpleader suit, asking the court to direct the payment of the money.

The case was tried before the court without a jury, and judgment rendered in favor of San Jacinto county, that it recover from the San Jacinto State Bank and the Shepherd State Bank and J. L. Chapman, commissioner of insurance and banking, and A. D. Brown, liquidating agent, in their representative capacities, the said sum of $15,825.98, same to be applied as a credit on the indebtedness of the Shepherd State Bank to the county, with interest at the rate of 6 per cent. per annum from August 19, 1921 (the date the Shepherd State Bank closed its doors). Also it was adjudged that the Shepherd State Bank and the commissioner of insurance and banking take nothing, and that the said sum of $15,825.98 be applied as a credit upon the indebtedness of the bondsmen of said Shepherd State Bank to the county, and that said bondsmen have their costs. The Shepherd State Bank, the commissioner of insurance and banking, and the liquidating agent each excepted to said judgment, and have brought this appeal.

Upon the request of appellants, the trial court filed his findings of fact and conclusions of law. There is no complaint as to the correctness of the findings of fact. The controlling question is whether, under the facts, the plaintiff, San Jacinto State Bank, had the right to bring this suit of interpleader. Appellants challenge this right in their first four propositions, which are:

(1) "A bank may not force its depositor and a stranger, not claiming that his title is derived through the depositor, to interplead."

(2) "An agent, holding funds of its principal, cannot compel his principal to litigate the title thereto with third persons."

(3) "A bank, under an independent contract by bond to account for a deposit to its depositor, may not compel its obligee to litigate title to the deposit with an adverse claimant, not claiming through the obligee depositor."

(4) "A bank, having on deposit funds of a customer to whom it has obligated itself to account for such funds and to whom it owes the contract duty of so accounting, cannot maintain a bill requiring its depositor and a third person, claiming the funds as a trust resulting from fraud, to litigate their claims thereto."

As these propositions all relate to the same fundamental idea underlying a bill of interpleader, they will be considered together.

To these propositions, appellee San Jacinto county replies:

"As the plaintiff, San Jacinto State Bank, was holding a fund which both the county and the commissioner of insurance and banking, as being in charge of the Shepherd State Bank, were claiming, and which each was demanding that plaintiff pay to it, the filing of its bill of interpleader by plaintiff was the proper procedure."

[1] The sufficiency of appellee San Jacinto State Bank's bill of interpleader is not questioned, but its right to the remedy is challenged. At common law, the remedy of interpleader was very narrow and restricted, but this narrow restriction of the right has quite generally been overthrown. The efficacious and wholesome remedy of equitable interpleader is so well established, and its purpose so well understood, that a discussion of its origin or growth is unnecessary. In our courts, where a blended system of both law and equity is concurrently administered, its application has long been broadly approved, without the narrow niceties and distinctions of other jurisdictions, where the law and equity dockets are separately maintained and administered. In our courts:

"The remedy of interpleader is allowed as a substantial right to the complainant, and he can seek the proper forum, to the end that in one principal action claimants might settle the contest among themselves, and not with him." Rochelle v. Pacific Express Co., 56 Tex. Civ. App. 142, 120 S. W. 543; Nixon v. New York Life Ins. Co., 100 Tex. 262, 263, 264, 98 S. W. 380; Melton v. Surety Co. (Tex. Civ. App.) 240 S. W. 574; Williams v. Simon (Tex. Civ. App.) 235 S. W. 257; Pulkrabeck v. Griffith (Tex. Civ. App.) 179 S. W. 282; Williams v. Wright, 20 Tex. 500; 5 Pomeroy, Eq. Jur. § 39; Bank v. Palmer (D. C.) 256 Fed. 680;

Baber v. Bank (Tex. Civ. App.) 218 S. W. 156; Platte Valley State Bank v. National Live Stock Bank, 155 Ill. 250, 40 N. E. 622; Foy v. East Dallas Bank (Tex. Civ. App.) 28 S. W. 137, 10 L. R. A. (N. S.) 755, note.

In Nixon v. Insurance Company, supra, it is said:

"While the circumstance of the case must be such as to place the stakeholder in some real doubt or hazard to entitle him to the remedy of interpleading, yet the remedy is so beneficial and so just that any reasonable doubt as to his right to an interpleader will be resolved in his favor."

[2] Appellants make no contest upon the merits of the case as to the right of appellee San Jacinto County to recover the money, but present their case and seek to recover as against the county on a question of pleading (that the San Jacinto State Bank cannot maintain a bill of interpleader for the reasons urged); however, appellee San Jacinto county submits the proposition:

"As the money held by the plaintiff, San Jacinto State Bank, is a part of the money originally on deposit with it of the San Jacinto county funds, and as the Shepherd State Bank became depository through its fraudulent agreement concerning its bid, and through concealing its insolvency from San Jacinto county, the county is entitled to the money as against the Shepherd State Bank and the commissioner of insurance and banking."

We think the proposition sound. It is undisputed that the two banks fraudulently conspired and agreed between themselves to stifle competition in the bidding to be selected as depository for San Jacinto county, and further agreed as to what their bids should be, and that, regardless of which one was selected, it would at all times keep one-half of the county's funds on deposit with the other. The law provides for the selection of county depository by awarding same to the highest and best bidder. The contract or agreement entered into by the two banks was a combination to stifle competition, was in fraud of the law, and against public policy and therefore void. James v. Fulcrod, 5 Tex. 512, 55 Am. Dec. 743; City National Bank v. City of Corpus Christi (Tex. Civ. App.) 233 S. W. 378; In re Blake, 150 Fed. 279, 80 C. C. A. 167; McMullen v. Hoffman, 174 U. S. 639, 19 Sup. Ct. 839, 43 L. Ed. 1117; Daily v. Hollis, 27 Tex. Civ. App. 570, 66 S. W. 586; Taylor v. Lafevers, (Tex. Com. App.) 221 S. W. 957; Fletcher v. Johnson, 139 Mich, 51, 102 N. W. 278, 111 Am. St. Rep. 401.

[3] Moreover, as the Shepherd State Bank was insolvent, and knew itself to be insolvent at the time it became depository and received the credits for the county's money in San Jacinto State Bank, this was such fraud as vitiated the depository contract and entitled appellee San Jacinto county to recover the money. Richardson v. New Orleans Debenture Redemption Co., 102 Fed. 780, 42 C. C. A. 619, 52 L. R. A. 67; Orme v. Baker, 74 Ohio St. 337, 78 N. E. 439, 113 Am. St. Rep. 968; Corn Exchange National Bank v. Trust Co., 188 Pa. 330, 41 Atl. 537, 68 Am. St. Rep. 872. Especially is this true, as the money is shown certainly to be a portion of the county's funds that was in the San Jacinto State Bank before the Shepherd State Bank became depository, and, as the depository contract was secured by fraud, the title to the money did not pass. Richardson v. New Orleans Coffee Co., 102 Fed. 785, 43 C. C. A. 583; Railway Company v. Johnston, 133 U. S. 566, 10 Sup. Ct. 390, 33 L. Ed. 683; In re Blake, 150 Fed. 279, 80 C. C. A. 167; Bank v. Yardley, 165 U. S. 634, 17 Sup. Ct. 439, 41 L. Ed. 855.

[4] The commissioner of insurance and banking merely stands in the shoes of the Shepherd State Bank—merely took the rights of that bank—and if it had no right under the fraudulent contract to claim the money, then the commissioner has none. He cannot maintain a cause of action against the San Jacinto State Bank to recover the $15,825.98, because the consideration of said bank's agreement to pay this money to the Shepherd State Bank by reason of the fraud practiced upon the county in obtaining the depository contract entirely failed, and the San Jacinto State Bank is thereby released from that obligation, when the county urges and maintains its right to avoid the contract, and the transaction with the Shepherd State Bank and to recover this money from the San Jacinto State Bank. The claim of the Shepherd State Bank against the San Jacinto State Bank was founded in fraud, and liable to be defeated at any time by the discovery of this fraud and the assertion of the right to recover of said bank by the county. In re Blake, 150 Fed. 280, 283, 80 C. C. A. 167.

[5, 6] Appellant's fifth proposition is that it was error for the court to permit oral proof of the agreement between the two banks, as to the amount of their bids, on the ground that same would vary their written contract relative to the bidding for appointment as depository. There is no merit in the contention. The testimony as to the amount each bank was to bid would not tend to vary the written agreement made by the banks, but, if it did, San Jacinto county was not a party to the contract between the two banks. The rule preventing parties to a written contract from varying it by parol evidence does not apply to others than parties to the contract. Johnson v. Portwood, 89 Tex. 235, 34 S. W. 596, 787; 22 C. J. 1292.

[7] By the sixth proposition, appellants assert that the court erred to the prejudice of appellants in giving judgment in favor of appellee San Jacinto county for interest on the amount adjudged at the rate of 6 per cent. per annum from August 19, 1921, the

date that the Shepherd State Bank closed its doors, and was taken in charge by the commissioner of insurance and banking insisting that interest on a claim against the assets of an insolvent bank may be allowed only to the date of suspension of the bank, and not thereafter. As a general proposition of law, the contention is correct. Gaston v. Campbell, 104 Tex. 576, 141 S. W. 515; Thomas v. Western Car Works, 149 U. S. 95, 13 Sup. Ct. 824, 37 L. Ed. 663. The judgment awarded interest at the rate of 6 per cent. in favor of appellee San Jacinto county, and against the San Jacinto State Bank, the holder of the funds in question. It does not as we construe it, attempt to require payment of interest by any of the appellants, but merely establishes the county's right to recover the fund as against all of the appellants. As the San Jacinto State Bank has had the use of this money since August 19, 1921, the county is entitled to receive, and it is but right that the party holding and using the money, the San Jacinto State Bank, should pay, interest on same; otherwise, it would have had the use of the money all this time without giving anything in return by way of interest.

[8] Besides, the judgment is not to be paid out of funds of the Shepherd State Bank for general creditors, but is to be paid by the San Jacinto State Bank. Moreover, as the judgment for interest is not complained of by the San Jacinto State Bank, and does not affect any of the appellants, it is not a matter of which appellants can complain.

The judgment should be affirmed; and it is so ordered.

Affirmed.