WESTCOTT CONSTRUCTION CORPORATION *vs.* CUMBERLAND CONSTRUCTION COMPANY, INC.

Norfolk.    December 12, 1974. — May 23, 1975.

Present: HALE, C.J., ROSE, KEVILLE, GRANT, & ARMSTRONG, JJ.

*Public Works.   Contract,* For public works, Bidding for contract, Sub-
   contract.  *Corporation,* Corporate entity.  *Agency,* What consti-
   tutes.

A corporation submitting a general bid for the construction of a project
   subject to G. L. c. 149, §§ 44A-44L, did not violate § 44J by using
   the sub-bid of a third party in its general bid rather than that of an
   affiliated corporation although the two corporations were under
   common control, had the same address, pooled their assets for bond-
   ing purposes, and were engaged in a common enterprise, where
   there were no additional factors to warrant treatment of the two
   corporations as a single entity. [295-300]
Discussion of circumstances in which separate corporate entities may
   be treated as one. [297-299]

BILL IN EQUITY filed in the Superior Court on February 6, 1973.

The suit was heard by *Griffin*, J.

*Charlotte Anne Perretta* (*Peter Macktaz & Richard Kirby* of Rhode Island with her) for Cumberland Construction Company, Inc.

*Robert J. Sherer* (*Frank M. Capezzera* with him) for the plaintiff.

ARMSTRONG, J. This is a bill for declaratory relief in which the plaintiff (Westcott Construction) seeks to establish the propriety of the general bid submitted by it to the Joint Board of Water Commissioners of the towns of Abington and Rockland (board) for the construction of a project subject to G. L. c. 149, §§ 44A-44L. While Westcott Construction's bid was the lowest one submitted, the defendant (Cumberland), the second lowest bidder, challenged the legality of Westcott Construction's bid. The General Counsel of the Department of Labor and Industries issued a memorandum supporting Cumberland's contention, and the board withheld action on the bids until the matter could be resolved judicially.

A judge of the Superior Court entered a final decree declaring that Westcott Construction's bid was valid and that the board was neither required nor authorized to reject it. Cumberland appeals from that decree. The board, though joined as a defendant in the Superior Court proceeding, is not a party to the appeal.

The sole issue before us is whether Westcott Construction's bid was in violation of G. L. c. 149, § 44J, which insofar as relevant provides: "[I]f a general bidder customarily performs with his own employees any sub-trade ... listed in Item 2 of the general bid form, he *may* submit a sub-bid on the sub-bid form ... and *shall* also submit under Item 2 of his general bid his name and amount for such sub-trade" (emphasis supplied)[1]. The issue arose be-

---

[1] Both parties postulate that the "shall" is mandatory; Westcott Construction expressly disavows any contention to the contrary.

cause a corporation affiliated with Westcott Construction, called Westcott Equipment Corporation (Westcott Equipment), had filed a bid for a mechanical subcontract for the project. As Westcott Equipment's was not the lowest sub-bid submitted, Westcott Construction's general bid substituted a different mechanical subcontractor's name. See *Interstate Engineering Corp.* v. *Fitchburg,* 367 Mass. 751, 756-757 (1975). Cumberland challenged the bid on the ground that Westcott Construction and Westcott Equipment were essentially the same entity, and that Westcott Construction was therefore prohibited by § 44J from listing any mechanical sub-bidder other than Westcott Equipment in the general bid.

The case was heard on a sparse statement of agreed facts, which included the following facts concerning the relationship between Westcott Construction and Westcott Equipment. They are separate corporations but have some stockholders, officers and directors in common. The affairs of both corporations are managed and controlled by the same individuals. Westcott Construction's general bid and Westcott Equipment's sub-bid were signed by the same individual, one F. Thomas Westcott, who identified himself as president of the former and vice-president of the latter. The general bid and sub-bid gave the business address of both corporations as 135 East Washington Street, North Attleborough. "[F]or purposes of bonding the assets of both corporations are pooled. Both corporations are part of a common enterprise and the stock is all family owned."

Section 44J speaks only in terms of a general bidder who himself files a sub-bid, and makes no reference to a case such as the present one where, at least on the face of the bids, there is no such identity of bidders. Nor does the legislative history underlying § 44J and its predecessor, G. L. c. 149, § 44C (F), inserted by St. 1939, c. 480, shed any light on the Legislature's intention in that regard. See 1939 Senate Doc. No. 272; 1939 House Doc. No. 2234. We assume, however, but do not decide, that where there is a substantial identity between corporations, as determined by the criteria set forth in such cases as *My Bread Baking*

*Co.* v. *Cumberland Farms, Inc.* 353 Mass. 614, 618-620 (1968), they are to be treated as a single entity for purposes of § 44J.

On the basis of the facts before us we are of the opinion that no such identity is shown. It is well settled that common ownership and control of the two corporations, standing alone, is insufficient to merge them into one or to make either the agent of the other. *Galdi* v. *Caribbean Sugar Co.* 327 Mass. 402, 407-408 (1951), and cases cited. *Gordon Chem. Co. Inc.* v. *Aetna Cas. & Sur. Co.* 358 Mass. 632, 638 (1971). The same is true where the corporations also occupy common premises. *Browne* v. *Brockton Natl. Bank,* 305 Mass. 521, 530 (1940). Those factors are of importance only where they combine with others in such a way as to "permit the conclusion that an agency or similar relationship exists between the entities." *My Bread Baking Co.* v. *Cumberland Farms, Inc., supra,* at 619. *Commonwealth* v. *Beneficial Fin. Co.* 360 Mass. 188, 290 (1971), cert. den. sub nom. *Farrell* v. *Massachusetts,* 407 U. S. 910 (1972), and sub nom. *Beneficial Fin. Co.* v. *Massachusetts,* 407 U. S. 914 (1972).

The *My Bread* and *Beneficial* cases recognize two classes of such additional factors. The first of these is "active and direct participation by the representatives of one corporation, apparently exercising some form of pervasive control, in the activities of another" together with "some fraudulent or injurious consequence of the intercorporate relationship." 353 Mass. at 619. 360 Mass. at 290-291. Even if the facts before us could be said to support a conclusion that the "pervasive control" element of that class of cases exists here, the element of a "fraudulent or injurious consequence of the intercorporate relationship" is wholly lacking. To be sure, the existence of the two corporations permitted Westcott Construction to ignore the sub-bid of its affiliate in submitting its general bid. But to say that that constitutes a "fraudulent or injurious consequence" for purposes of the above-quoted rule is to reason in circles. We are mindful of the fact that Westcott Equipment's sub-bid excluded all general bidders other than Westcott Construction from

availing themselves of it. But that might well have been motivated by legitimate business considerations having nothing to do with the advantage which might thereby accrue to Westcott Construction in submitting its general bid. We cannot infer that Westcott Construction "used [Westcott Equipment] . . . to achieve an illegal purpose." *Browne* v. *Brockton Natl. Bank,* 305 Mass. at 530. There is no showing that either "corporation is a sham, or is used to perpetrate deception to defeat a public policy" established by G. L. c. 149 or any other law. *New England Theatres, Inc.* v. *Olympia Theatres, Inc.* 287 Mass. 485, 493 (1934), cert. den. sub nom. *E. M. Loew's, Inc.* v. *New England Theatres, Inc.* 294 U. S. 713 (1934). *Browne* v. *Brockton Natl. Bank, supra,* at 530-531. *Galdi* v. *Caribbean Sugar Co.* 327 Mass. at 407-408. *Gordon Chem. Co. Inc.* v. *Aetna Cas. & Sur. Co.* 358 Mass. at 638.

The second class of cases where separate corporate identities may be overlooked is where, in addition to common ownership and management, "there is a confused intermingling of activity of two or more corporations engaged in a common enterprise with substantial disregard of the separate nature of the corporate entities, or serious ambiguity about the manner and capacity in which the various corporations and their respective representatives are acting." *My Bread Baking Co.* v. *Cumberland Farms, Inc.* 353 Mass. at 619. *Commonwealth* v. *Beneficial Fin. Co.* 360 Mass. at 291. Another formulation of the same rule appears later in the *My Bread* case: "Where there is common control of a group of separate corporations engaged in a single enterprise, failure (a) to make clear which corporation is taking action in a particular situation and the nature and extent of that action, or (b) to observe with care the formal barriers between the corporations with a proper segregation of their separate businesses, . . . records, and finances, may warrant some disregard of the separate entities in rare particular situations in order to prevent gross inequity." 353 Mass. at 620. Still another such formulation is contained in the *Beneficial* case, where the court quoted with approval the following statement from

*United States* v. *Brown & Sharpe Mfg. Co.* 141 F. Supp. 520, 526 (D. R.I. 1956): "[W]here [in addition to a corporation's ownership of the capital stock of a subsidiary] it is also shown that the business conducted by the subsidiary is a part of the business of the parent corporation, and where such ownership of stock in a subsidiary is employed not for the purpose of participating in the affairs of the subsidiary in a manner normal and usual with stockholders but for the purpose of making it a mere agent or department of the parent corporation, the courts will look through the form to the realities of the relation between the corporations and will hold that in such cases the subsidiary is a mere agent or department for carrying on the business of the parent corporation." 360 Mass. at 291-292.

While the parties have stipulated that Westcott Construction and Westcott Equipment "are part of a common enterprise," the only facts present which bear on their manner of conducting that enterprise are that they both bid on the same project and that their assets are "pooled" for bonding purposes. Those facts fall short of suggesting "a confused intermingling of activity" by the two corporations, or any "substantial disregard of the[ir] separate [corporate] nature,"[2] or any "serious ambiguity" as to which corporation is acting, or treatment of Westcott Equipment by Westcott Construction as "a mere agent or department" of the latter, within the meaning of any of the cases quoted above. Contrast *W. W. Britton Inc.* v. *S. M. Hill Co.* 327 Mass. 335, 338-339 (1951); *Albre* v. *Sinclair Constr. Co. Inc.* 345 Mass. 712, 717 (1963); the *My Bread* case, 353 Mass. at 620-621; the *Beneficial* case, 360 Mass. at 291-293; *United States* v. *Brown & Sharpe Mfg. Co.* 141 F. Supp. at 526.

The two classes of cases referred to above may not be the only ones where a court is entitled to disregard the separate identities of affiliated corporations. But they are

---

[2] The fact that their assets are "pooled" for bonding purposes, suggesting as it does that each corporation has assets of its own and that their respective assets are kept separate for other purposes, may even justify a contrary inference.

the only ones which have come to our attention either through Cumberland's brief or our own research. As neither applies in the present case, the entry must be

*Decree affirmed.*