COMMODITY FUTURES TRADING COMMISSION

v.

COMVEST TRADING CORPORATION, William Howe, David Feeney, Comvest, Inc.

Civ. A. No. 79–1071–K.

United States District Court, D. Massachusetts.

Dec. 6, 1979.

Michael R. Koblenz, Regional Counsel, New York City, Eileen Reinhardt, Commodity Futures Trading Commission, New York City, for plaintiff.

Hale & Dorr, Robert Keefe, Gordon T. Walker, Boston, Mass., for defendants.

## MEMORANDUM

KEETON, District Judge.

### I.

This action was commenced by the Commodity Futures Trading Commission ("CFTC") against the defendant, Comvest Trading Corporation ("CTC") after CTC filed financial statements with the CFTC indicating that CTC's adjusted net capital had been substantially below that required under the Commodity Exchange Act and regulations thereunder.[1] The financial statements filed by CTC showed that since the end of February, 1979, CTC had failed to meet customer account segregation requirements and showed a negative adjusted net capital position of $566,417 as of May 25, 1979.

On June 1, 1979, this court entered a temporary restraining order, under which CTC and its principals were enjoined from soliciting or accepting funds from clients during such time as it continued to be undercapitalized and undersegregated. A protective order prohibiting the dissipation of assets or destruction of records was also entered on that date.

The complaint was amended on June 11, 1979 to name Comvest, Inc. ("Comvest") as a defendant. Comvest, an affiliate of CTC, is registered as a commodity trading advisor and commodity pool operator; it is not a futures commission merchant and does not trade for clients.

On June 15, 1979, all defendants consented to the entry of a protective order and a permanent injunction having substantially the same terms as the previous protective order and temporary restraining order.

---

1. See 7 U.S.C. §§ 6d(2) and 6f(2) and Regulations 1.17(a)(1) and 1.20(a) promulgated thereunder [43 Fed.Reg. 39956 (September 8, 1978) and 17 C.F.R. § 1.2a].

At the June 15 hearing, the CFTC also moved the court to appoint an equity receiver:[2]

> to take into his immediate custody, control and possession all assets and property belonging to or in the possession or control of defendants CTC and COMVEST, . . ., and authorizing, empowering and directing such receiver to collect and take charge of and to hold and administer the same subject to further order of this Court, . . ..

The defendants opposed the appointment of a receiver for both corporations, and the court deferred ruling on this matter to give the parties time to address the questions of the necessity for the appointment of a receiver, the manner in which the receiver would be compensated, and the specifics of the receiver's expected duties. These issues having been briefed by the parties, the Court now addresses the motion for appointment of a receiver.

## II.

■ The CFTC has argued persuasively that CTC and Comvest should be treated as one corporation for the purposes of a receivership. Affidavits before the court show clearly that the two corporations have shared common premises and payroll, and have been managed by the same persons—the defendants Howe and Feeney, who have controlled the activities of both corporations. In addition, the corporations have functioned as a common enterprise of advising and soliciting customers regarding buying and selling for commodity accounts. In practical operations, the activities of the two corporations have been pervasively intermingled with substantial disregard of the separate corporate entities.[3]

■ The CFTC is also correct that although the Commodity Exchange Act, as amended, does not specifically provide for the appointment of receivers, a federal district court, sitting in equity, has broad discretion to fashion appropriate relief to enforce the requirements of remedial statutes such as this act. *See, Commodity Futures Trading Commission v. Muller*, 570 F.2d 1296, 1300 (5th Cir. 1978).

## III.

The CFTC, however, has not offered adequate support for its position that a receiver is necessary in this case.

2. 28 U.S.C. § 959(b) defines the substantive rights, duties and liabilities of a federal equity court receiver as follows:

> Except as provided in section 1166 of Title 11, a trustee, receiver or manager appointed in any cause pending in any court of the United States, including a debtor in possession, shall manage and operate the property in his possession as trustee, receiver or manager according to the requirements of the valid laws of the State in which such property is situated, in the same manner that the owner and possessor thereof would be bound to do if in possession thereof.

Rule 66, Federal Rules of Civil Procedure, provides that the practice and the administration of estates by receivers shall continue to be that heretofore followed by federal equity courts.

3. *My Bread Baking Co. v. Cumberland Farms, Inc.*, 353 Mass. 614, 233 N.E.2d 748 (1968) sets forth two tests for determining when separate corporations should be treated as one:

> Although common ownership of the stock of two or more corporations together with common management, standing alone, will not give rise to liability on the part of one corporation for the acts of another corporation or its employees, additional facts may be such as to permit the conclusion that an agency or similar relationship exists between the entities. Particularly is this true (a) when there is active and direct participation by the representatives of one corporation, apparently exercising some form of pervasive control, in activities of another and there is some fraudulent or injurious consequence of the intercorporate relationship, or (b) when there is a confused intermingling of activity of two or more corporations engaged in a common enterprise with substantial disregard of the separate nature of the corporate entities, or serious ambiguity about the manner and capacity in which the various corporations and their respective representatives are acting. 233 N.E.2d at 751–752. *See also, Commonwealth v. Beneficial Finance Co.*, 360 Mass. 188, 275 N.E.2d 33, 92 (1971), *cert. denied sub nom. Beneficial Finance Co. v. Massachusetts*, 407 U.S. 914, 92 S.Ct. 2433, 32 L.Ed.2d 689 (1972); *Westcott Construction Corp. v. Cumberland Construction Co., Inc.*, 3 Mass.App. 294, 328 N.E.2d 522, 525 (1975). The defendants do not dispute that the corporations are intertwined and interdependent.

■ Appointment of a receiver "is, like an injunction, an extraordinary remedy and ought never to be made except in cases of necessity upon a clear showing that . . . emergency exists, in order to protect the interests of the plaintiff in the property." *GA Enterprises, Inc. v. Leisure Living Communities, Inc.*, 355 F.Supp. 947, 949 (D.Mass. 1973), quoting 7 *Moore's Federal Practice* ¶ 66.05 at p. 1902.2 (2d ed. 1972). *See also*, 12 Wright & Miller, Federal Practice and Procedure: Civil § 2983 at p. 21 (1973) ("[t]he appointment of a receiver is considered to be an extraordinary remedy that should be employed with the utmost caution and granted only in cases of clear necessity to protect plaintiff's interests in the property").

■ The form and quantum of evidence required on a motion requesting the appointment of a receiver are matters of judicial discretion.[4] Factors weighed by courts in determining whether a receiver should be appointed have included fraudulent conduct on the part of the defendant;[5] imminent danger that property would be lost, concealed, injured, diminished in value, or squandered;[6] the inadequacy of the available legal remedies;[7] the probability that harm to plaintiff by denial of the appointment would be greater than the injury to the parties opposing appointment;[8] and the plaintiff's probable success in the action and the possibility of irreparable injury to his interests in the property.[9]

Another set of relevant factors—or what might be described as another perspective for evaluation of factors relevant to appointment of a receiver—concerns the degree of probability that the interests of the plaintiff and others sought to be protected would in fact be well served by receivership. What is the probability that assets subject to the proposed receivership have a value sufficient to outweigh the added costs likely to result from receivership? What are the dimensions of those probable costs, and what practical provisions can be made for bearing them?

One more relevant set of factors—or another perspective—concerns the nature of the assignment the court will be presenting to the person or other legal entity appointed as receiver, if the motion for receivership is allowed. Can the court assure the person or entity appointed that the undertaking is a useful one and one that will serve the public interest? Can provisions be made for assurance of reasonable compensation to the receiver and for the availability of reasonable resources to pay for services of others whose assistance the receiver will need to discharge effectively the assigned responsibility, or instead is it probable that the receiver will in effect be acting without compensation and without resources for engaging essential supporting services of others?

■ In the present case the CFTC argues that a receiver is "absolutely necessary" to (1) "oust the individual defendants from control of the vehicles they have utilized in such a manner as to jeopardize customer funds and investments"; (2) "assure that they can not inflict further injury upon the public"; and (3) "insure that the assets of Comvest Trading Corporation and Comvest, Inc. are not secreted or otherwise dissipated." Are these conclusions supported by the proof submitted?

The affidavit of Bernard J. Purta, CFTC auditor, offered in support of the motion, shows, on the basis of financial records provided to him, that on June 19, 1979, Comvest, Inc. had assets of $5,981.77, and that

---

4. *See* 12 Wright & Miller, Federal Practice & Procedure: Civil § 2983 at 25.

5. *See Burnrite Coal Co. v. Riggs*, 274 U.S. 208, 212, 47 S.Ct. 578, 71 L.Ed. 1002 (1927).

6. *See Gordon v. Washington*, 295 U.S. 30, 37–39, 55 S.Ct. 584, 79 L.Ed. 1282 (1935); *Garden Homes, Inc. v. United States*, 200 F.2d 299, 301 (1st Cir. 1952).

7. *See Mintzer v. Arthur L. Wright Co.*, 263 F.2d 823, 826 (3d Cir. 1954).

8. *Id.* at 825.

9. *See Bookout v. First National Mtg. and Disc.*, 514 F.2d 757, 758 (5th Cir. 1975).

on June 1, 1979, Comvest Trading Corporation had assets of $4,348.41.[10] No evidence has been offered that the financial records referred to at this point in the affidavit were false or inaccurate, or that any other assets exist. Thus, it appears that the court is asked to appoint a receiver to receive and protect less than $11,000 in assets in the hope of serving the interests of investors and others who have more than $600,000 at stake. No evidence is presented that those whose interests are to be protected would be better served by a receiver than by allowing the defendants to continue to function, as apparently they seek to do, in the hope of salvaging more from an ongoing business, even though it must function under the constraints of the permanent injunction and the protective order. If it be argued that Comvest seeks also to protect the interests of future investors against the continuation of the business, a cogent answer is that receivership is not the only available remedy and is not shown to be the best available remedy. The CFTC has not argued that the business should be terminated. If that were its position, it could proceed administratively under 7 U.S.C. § 6g, which authorizes revocation or suspension of registration in appropriate circumstances.

With respect to protection of customers against inequitable distribution among them of the very limited assets that defendants hold, receivership is not shown to be either essential to protection against that risk or the best means of protection against that risk. It should be noted that the protective order of June 15, 1979, already prohibits defendants from "disposing of in any manner, any assets, causes in action, or other property of the Defendants herein, or any of them," with exceptions that do not include paying over to one customer-claimant, or to another person for the special protection of one customer-claimant, any part of the defendant's assets. Thus, such payment would be in violation of the protective order.

On the record presented, then, the court cannot find that the appointment of a receiver would add materially to the relief previously granted in the permanent injunction and the protective order prohibiting the dissipation of assets or destruction of records. Moreover, the CFTC has advanced no plan or proposal for compensating the receiver and paying other expenses of receivership and has made no showing that the costs of doing so would not outweigh the benefits reasonably to be expected from receivership.

The CFTC, as an agency of government, may assert an immunity from legal responsibility for providing for costs of receivership. *See, e. g., Securities and Exchange Commission v. Independence Drilling Corp.*, 595 F.2d 1006 (5th Cir. 1979). A governmental agency's immunity from legal responsibility for costs of receivership, however, does not cause those costs to be less real. Nor does it discharge the burden of the agency, as a party moving for receivership, to establish that the benefits reasonably to be expected from receivership outweigh the resulting burdens, including costs of the receivership itself. If the movant is not prepared to present to the court a plan or proposal for bearing those costs, as well as a basis upon which the court could appropriately assure an appointed receiver of the usefulness of the services to be rendered and the availability of needed resources, the case for appointment of a receiver is not made. Indeed, in these circumstances, the costs and consequences of receivership might harm rather than support the very persons and interests the moving party seeks to protect.

The motion for appointment of a receiver will be denied.

---

10. The affidavit shows also that Comvest, Inc. had liabilities of $69,007.94 and Comvest Trading Corporation had liabilities of $565,765.38.