The CHASE MANHATTAN BANK, N. A., Plaintiff-Appellee,

v.

TURABO SHOPPING CENTER, INC., Defendant-Appellant.

No. 81–1601.

United States Court of Appeals, First Circuit.

Argued May 5, 1982.

Decided July 23, 1982.

Jose Raul Cancio Bigas, Hato Rey, P. R., with whom Rodriguez-Ramon, Pena & Cancio, Hato Rey, P. R., was on brief, for defendant-appellant.

Jay A. Garcia-Gregory, San Juan, P. R., with whom Fiddler, Gonzalez & Rodriguez, San Juan, P. R., was on brief, for plaintiff-appellee.

Before COFFIN, Chief Judge, PHILLIPS,* Senior Circuit Judge, BOWNES, Circuit Judge.

BOWNES, Circuit Judge.

Turabo Shopping Center, Inc. (Turabo) appeals an order of the district court appointing a receiver to manage, operate, and control a shopping center owned and run by Turabo during the pendency of a mortgage foreclosure action on the center brought by Turabo's creditor and mortgagee, The Chase Manhattan Bank, N.A. (Chase). This is an appealable interlocutory order, 28 U.S.C. § 1292(a)(2).

Turabo owns and operates the shopping center, the Plaza del Carmen Shopping Center, in Caguas, Puerto Rico. In the mid-1970's, Turabo obtained interim construction financing from Chase in order to build the center and mortgaged the shopping center to Chase. Chase loaned Turabo a total of $6,799,800, all of which, according to Chase, is still owing. The amount of interest now owing is disputed, Chase claiming that it is just over $3,000,000 and Turabo contending that it is closer to $2,300,000. Turabo was expected to obtain permanent financing elsewhere and to pay off Chase, but that has not come to pass. Under the terms of the mortgage agreement, Chase is now to be repaid by the assignment of rents due Turabo from tenants in the shopping center, and Chase has received some—but, Chase claims, not all—of the rents to which it is entitled. Adrian Perez-Agudo, president of Turabo, and Maria Eugenia Gonzalez de Perez are guarantors of Turabo's loan and codefendants in this foreclosure action, although only Turabo has appealed the order.

In April, 1981, Chase filed suit to foreclose on the mortgage and, approximately a month later, moved for the appointment of a receiver. After a hearing, the district court granted the motion and appointed a still-unnamed receiver with wide powers to supervise operation of the shopping center. The district court based its order on alternative grounds: first, that the twenty-first clause of the mortgage agreement entitled Chase to have a receiver appointed, and, second, that even in the absence of that clause, equity favored the appointment.

■ We turn first to the equitable justification for the award. Most federal court decisions dealing with the appointment of a receiver pendente lite appear to apply federal law without discussion. *See Democratic Central Comm. v. D.C. Transit System, Inc.*, 459 F.2d 1178, 1181 (D.C.Cir.1972); *Tanzer v. Huffines*, 408 F.2d 42, 43 (3d Cir. 1969); *Garden Homes, Inc. v. United States*, 200 F.2d 299, 301 (1st Cir. 1952); *CFTC v. Comvest Trading Corp.*, 481 F.Supp. 438, 441 (D.Mass.1979); *United States v. Mansion House Center North Redevelopment Co.*, 419 F.Supp. 85, 87 (E.D. Mo.1976); *Bookout v. Atlas Financial Corp.*, 395 F.Supp. 1338, 1341–42 (N.D.Ga.1974), aff'd per curiam sub nom. *Bookout v. First Nat'l Mortgage & Discount Co.*, 514 F.2d 757 (5th Cir. 1975); *Haase v. Chapman*, 308 F.Supp. 399, 406 (E.D.Mo.1969). *But see In re Armstrong Glass Co.*, 502 F.2d 159, 163–64 (6th Cir. 1974) (applying Tennessee law). We need go no further because appellant agrees that the appointment of receivers in federal court is controlled by federal law. Appellant's Brief at 11.

■ The law governing the appointment of receivers in federal courts has not been reduced to a convenient formula. We have observed that

> to warrant the appointment of a receiver to manage and operate [mortgaged property pending foreclosure], as well as only to collect [its] rents and profits, there must be at the least a "sufficient showing" of something more than the inadequacy of the security and the doubtful financial standing of the debtor.

*Garden Homes, Inc. v. United States*, 200 F.2d at 301. We did not determine what that "something more" was, but other courts have looked to such factors as

> fraudulent conduct on the part of the defendant; imminent danger that proper-

---

* Of the Sixth Circuit, sitting by designation.

ty would be lost, concealed, injured, diminished in value, or squandered; the inadequacy of the available legal remedies; the probability that harm to plaintiff by denial of the appointment would be greater than the injury to the parties opposing appointment; and the plaintiff's probable success in the action and the possibility of irreparable injury to his interests in the property.

*CFTC v. Comvest Trading Corp.*, 481 F.Supp. at 441 (footnotes (citing cases) omitted). Also relevant are the probability that appointment of a receiver will protect the interests of the party seeking appointment and the nature of the receiver's duties. *Id.* The district court's ruling on a motion for appointment of a receiver will be reversed only if the court abused its discretion. *Tanzer v. Huffines*, 408 F.2d at 43; *View Crest Garden Apartments, Inc. v. United States*, 281 F.2d 844, 849 (9th Cir.), *cert. denied*, 364 U.S. 902, 81 S.Ct. 235, 5 L.Ed.2d 195 (1960); *Garden Homes, Inc. v. United States*, 200 F.2d at 302.

■ We believe that the district court was well within its discretion in appointing a receiver; indeed, the evidence compelled such an order. In addition to the fact that the value of the shopping center is probably inadequate to cover amounts still owed to Chase by Turabo, three pieces of essentially uncontradicted evidence showed unfair and arguably fraudulent dealing on Turabo's part and the likelihood of continuing injury to Chase's interest in the shopping center. First, Turabo's general laxity in rent collection from shopping center tenants was especially marked in its treatment of three tenant companies run by the sister of Perez-Agudo, Turabo's president. Those companies paid no rent for a considerable period of time.[1] Second, Turabo, not having paid its lawyer and agent for obtaining tenants,

allowed the lawyer to set up a restaurant[2] in the shopping center without charging rent and without signing a rental contract. The admitted reason for the absence of a contract was to prevent Chase from making a claim to rental payments from the restaurant. Finally, Perez-Agudo withheld approximately $100,000 in rent assigned to Chase in order, among other purposes, to retain attorneys to defend Turabo in the mortgage foreclosure action and to obtain an appraisal of the shopping center to be used in the foreclosure litigation.

Because we uphold the appointment of the receiver on equitable grounds, we have no occasion to consider the effect of the twenty-first clause of the mortgage agreement.[3]

*The order of the district court is affirmed.*

---

1. The district court was within its discretion in concluding that Chase had not agreed to forebear collection of some rents because of flood damage to the three tenants.

2. This lawyer, Ema Sara Portela, acted through a number of corporate entities, but the district court did not treat them as distinct, and Turabo has not argued to the contrary.

3. Chief Judge Coffin, while concurring in this opinion, would prefer to place primary emphasis on this clause, its validity never having been put in issue below. The court's recitation of the equitable grounds, in his view, makes crystal clear that whether or not such a contract clause is sufficient, without more, to justify appointment of a receiver, the "more" exists here in abundance.