**In the Matter of Guy E. McGAUGHEY, Jr., Debtor–Appellant.**

**Nos. 93–2058, 93–2084.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 5, 1994.

Decided May 13, 1994.

Rehearing and Suggestion for Rehearing En Banc Denied July 22, 1994.

been determined and a notice of deficiency has      been mailed. *See* 26 U.S.C. § 6213(a).

Robert L. Simpkins, Asst. U.S. Atty., Office of the U.S. Atty., Crim. Div., Fairview Heights, IL, Gary R. Allen, Murray S. Horwitz (argued), William S. Estabrook, Dept. of Justice, Tax Div., Appellate Section, Washington, DC, Gerald M. Burke, Office of the U.S. Atty., Civ. Div., Fairview Heights, IL, and Charles M. Greene, and Eugene J. Rossi, Dept. of Justice, Tax Div., Appellate Section, Washington, DC, for appellee.

Steven N. Mottaz (argued), Thomas, Mottaz, Eastman & Sherwood, Alton, IL, Richard A. Green, Feirich, Schoen, Mager & Green, Carbondale, IL, Clyde Kuehn, Kuehn & Trentman, Belleville, IL, for defendant-appellant.

Guy E. McGaughey, Jr., McGaughey & McGaughey, pro se.

Before POSNER, Chief Judge, and FAIRCHILD and FLAUM, Circuit Judges.

FLAUM, Circuit Judge.

This is an appeal from the district court's order partially lifting an automatic bankruptcy stay and appointing a receiver to take control of a debtor's non-exempt assets. We affirm in part and dismiss in part.

## I. Background

The record indicates that the problems of Guy E. McGaughey, Jr. ("Debtor") began on Christmas Day 1972 when the IRS assessed him $573,563 for his 1960's back taxes. Over the next several years Debtor submitted various offers in compromise (known as "656 Forms"), petitioning the IRS to settle for some amount less than the total assessment. The IRS contends that all such offers were rejected. On December 22, 1987 the IRS filed suit in the United States District Court against Debtor in an attempt to recover $2,386,068 (reflecting the original amount owed, penalties, and additional assessments made in 1972 and 1977) plus statutory interest. On April 1, 1991, judgment was entered in its favor for $3,410,060 including interest and penalties.

Fifteen days later Debtor's stepson found a copy of a 656 Form among some old family files. Relying on the document he petitioned the court to amend or alter its judgment. Notably, this 656 Form was signed by both Debtor and an IRS revenue agent and a clause waiving the statute of limitations appeared to have been crossed out. The IRS admitted that its agent had signed the 656 Form but asserted that the statute of limitations waiver had not been crossed out when the Form was signed.

The district court denied Debtor's motion to amend or alter the judgment because his new evidence "simply contain[ed] repetitions of, or variations on arguments which were previously considered and rejected by this Court and that Debtor did not exercise due diligence in attempting to discover the 'offer in compromise.'" On October 13, 1992 the

Seventh Circuit affirmed. We held that the United States had properly used secondary evidence, under Fed.R.Evid. 1004, to establish the existence and validity of Debtor's waiver of his statute of limitation and that the evidence produced by the Government had established that the missing 656 Form had included the waiver clause intact when signed. *United States v. McGaughey,* 977 F.2d 1067, 1071–74 (7th Cir.1992) *cert. denied,* —— U.S. ——, 113 S.Ct. 1817, 123 L.Ed.2d 447 (1993).

Notwithstanding this ongoing litigation with the IRS, Debtor's financial shenanigans allegedly continued as he contrived to avoid paying any of his back taxes and to dissipate his personal assets. The Government contends that Debtor transferred money from his late father's estate, through his law practice and other business entities, to his former wife. On October 21, 1992 the district court granted a temporary restraining order ("TRO") freezing Debtor's bank accounts and other assets. The court also set a date on which Debtor must show cause why a preliminary injunction should not issue and why a receiver should not be appointed. In early November 1992 the district court continued the TRO on all of Debtor's assets (with the exception of his Indianapolis law offices) and set the preliminary injunction hearing for December 16, 1992. The court on this date issued the preliminary injunction. Eventually, after numerous motions and responses, the district court set February 17, 1993 as the date on which it would name the receiver and issue the plenary order.

In an effort to block the court, Debtor filed a Chapter Seven bankruptcy petition on February 12, 1993. The Government responded by filing a combined motion to withdraw the proceeding from the bankruptcy judges, *see* 28 U.S.C. § 157(d), and to lift the automatic stay. After the March 25th hearing the district court ruled that the evidence established that Debtor may have misstated his assets in the past, that Debtor was not forthcoming in providing information to either the Government or the court, and that Debtor failed to make a full and fair disclosure of the information as previously ordered by the court. Accordingly, the court held that prob-

able cause existed to believe that Debtor's tax debt was non-dischargeable because of willful evasion, and that cause existed to partially lift the automatic stay to appoint a receiver to determine the existence of any post-petition assets or income to allow the collection of the taxes owed. On March 26, 1993, the district court granted the Government's motion to withdraw Debtor's bankruptcy pursuant to 28 U.S.C. § 157(d). On April 1, 1993 the court appointed the receiver and at the same time lifted the automatic stay to allow the Government's civil action against Debtor to continue. Debtor appeals from these rulings.

## II. Analysis

Debtor argues that the district court abused its discretion in (A) partially lifting the automatic stay, (B) appointing a receiver for Debtor's post-petition income, and (C) granting the Government's motion to withdraw the proceeding from the bankruptcy judges.

### A. Automatic Stay

The Bankruptcy Code provides that filing a Chapter Seven petition, as Debtor did here, generally activates an automatic stay against any attempt to collect or enforce any lien, judgment or claim against the estate. 11 U.S.C. § 362(a); *In re Vitreous Steel Products Co.,* 911 F.2d 1223, 1231 (7th Cir. 1990). In a Chapter Seven proceeding, however, a court may lift an automatic stay if, in an appropriate hearing, an interested party can show a lack of adequate protections for creditors' interests, or if the debtor has no equity in the collateral. *See* 11 U.S.C. § 362(d); *Vitreous Steel,* 911 F.2d at 1232; *In re Boomgarden,* 780 F.2d 657, 663 (7th Cir.1985). Such hearings may be summary in character—strictly limited to an examination of the adequacy of protections for creditors' interests and other equitable considerations. *Vitreous Steel,* 911 F.2d at 1232; *Johnson v. Righetti,* 756 F.2d 738, 740 (9th Cir.), *cert. denied,* 474 U.S. 828, 106 S.Ct. 88, 88 L.Ed.2d 72 (1985). We review the decision to lift an automatic stay for an abuse of discretion. *In re Boomgarden,* 780 F.2d at

660; *Holtkamp v. Littlefield,* 669 F.2d 505, 507 (7th Cir.1982).

■ At the end of the March 26th hearing the district court expressly found that probable cause existed to believe that Debtor may have actively sought to evade his tax liabilities and dissipate his assets by satisfying his personal expenses with funds held in the name of his law firm and other businesses, issuing numerous checks for many thousands of dollars to his wife and other relatives drawn from corporate accounts, using nine different credit accounts to pay for obvious personal expenses, and also frequently allowing his wife to use several of the accounts for her personal expenses. Furthermore, the court found evidence that Debtor may have misstated his assets in the past and failed to be forthcoming after a request from the court. Consequently, the court opined that Debtor's taxes are non-dischargeable and concluded that cause existed under § 362 to partially lift the automatic stay allowing the Government to continue to determine Debtor's post-petition assets and income.

While we agree with Debtor that the district court need not have considered the non-dischargeability of his tax debt in the summary hearing;[1] this criticism touches at a matter only incidental to the district court's ruling. The court's evidentiary finding that Debtor may be both a tax evader and asset dissipater, *see supra* at 906, amply supports its decision to lift the stay.[2] Even though the district court may have considered an arguably extraneous matter (non-dischargeability), this is not a ground for reversal. The singularly relevant matter is Debtor's propensity to evade taxes and dissipate his assets. Therefore, giving due deference to the district court's findings regarding Debtor's behavior, we must conclude that notwithstanding any superfluous discussion of non-

dischargeability, the court did not abuse its discretion. The decision of the court to partially lift the automatic stay is affirmed.

### B. Receiver

■ Federal courts have an inherent equitable power to appoint a receiver to manage a defendant's assets during the pendency of litigation. *See, e.g., Tanzer v. Huffines,* 408 F.2d 42, 43 (3rd Cir.1969); *Levin v. Garfinkle,* 514 F.Supp. 1160, 1163 (E.D.Pa. 1981). More pointedly here, the Internal Revenue Code specifically provides that at the Government's request a court may "appoint a receiver to enforce the lien, or, upon certification by the Secretary during the pendency of such proceedings that it is in the public interest, may appoint a receiver with all the powers of a receiver in equity." I.R.C. § 7403(d). The Government requested the appointment of a receiver and provided the requisite certification of necessity. When a request is made for an appointment of a receiver under § 7403(d), the Government needs only to make a *prima facie* showing that a substantial tax liability probably exists and that the Government's collection efforts may be jeopardized if a receiver is not appointed. *See United States v. O'Connor,* 291 F.2d 520, 525 (2d Cir.1961); *Florida v. United States,* 285 F.2d 596, 598 (8th Cir. 1960). The appointment of a receiver is an especially appropriate remedy in cases involving fraud and the possible dissipation of assets since the primary consideration in determining whether to appoint a receiver is the necessity to protect, conserve and administer property pending final disposition of a suit. *See Consolidated Rail Corp. v. Fore River Ry. Co.,* 861 F.2d 322, 326–27 (1st Cir.1988); *Chase Manhattan Bank, N.A. v. Turabo Shopping Center, Inc.,* 683 F.2d 25, 26–27 (1st Cir.1982) (citing *CFTC v. Comvest*

---

1. *Cf. In re Axton,* 641 F.2d 1262, 1270–71 (9th Cir.1981) (stating that when construing § 362(d) the mere fact that a complaint for relief from a stay has been filed does not grant summary jurisdiction to consider Debtor's affirmative counterclaims); *Madison Nat'l Bank v. Chiapelli,* 131 B.R. 354, 359 (Bankr.E.D.Mich.1991) (noting that a hearing for relief from the automatic stay is intended to be summary, and a counterclaim should to be considered on the merits, although "a determination on the merits of a 'direct de-

fense' challenging the validity of a lien is not precluded").

2. Furthermore, we note that the district court did not really consider the merits of Debtor's claim of discharge, but rather merely concluded that the Government had demonstrated "probable cause" to rebut Debtor's claim of discharge in affording Debtor an opportunity to file an adversary proceeding raising the question.

*Trading Corp.*, 481 F.Supp. 438, 441 (D.Mass.1979)); *United States v. Peelle Co.*, 224 F.2d 667 (1955). Whether the district court was correct in appointing a receiver is a prudential decision reviewable under the abuse of discretion standard. *See Florida*, 285 F.2d at 602. In the district court's discussion of Debtor's behavioral propensities, the court found probable cause that Debtor had a history of fraud, tax evasion, and asset dissipation, *see supra* at 906, such that the appointment of a receiver would be prudent, *see e.g. Chase*, 683 F.2d at 26–27. With this evidence in the record we must conclude that the court did not abuse its discretion in making such an appointment.

### C. Withdraw

■ When the district court granted the Government's motion to withdraw Debtor's bankruptcy referral the court noted that Debtor's action contained issues nearly identical to the existing civil action against him. The court reasoned that withdrawing the factually parallel bankruptcy referral would save scarce judicial resources, prevent forum shopping, and (given the complexity of the case) expedite the Chapter Seven process by keeping the bankruptcy action in a forum already familiar with the issues it presents. Since the order granting a motion to withdraw is not a final judgment, this court lacks jurisdiction to review that order at this point in the litigation. *In re Powelson*, 878 F.2d 976, 979 (7th Cir.1989) ("[A] decision to withdraw a reference or to refuse such a withdrawal is interlocutory and non-reviewable."); *FDIC v. Moens*, 800 F.2d 173, 175 (7th Cir. 1986). Therefore we dismiss this part of Debtor's appeal.

AFFIRMED in part and DISMISSED in part.